In re George JERCICH, Debtor.

James A. Petralia, Appellant,

v.

George Jercich, Appellee.

No. 00–15300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 2000.

Filed Jan. 23, 2001.

Thomas R. Duffy and Ralph P. Guenther, Duffy & Guenther, Monterey, California, for the appellant.

Thomas D. Patrick, Redding, California, for the appellee.

Before: RYMER, T.G. NELSON and WARDLAW, Circuit Judges.

T.G. NELSON, Circuit Judge:

James A. Petralia appeals the Bankruptcy Appellate Panel ("BAP") affirmance of the Bankruptcy Court's order granting judgment in favor of debtor George Jercich in Petralia's action seeking to have a debt excepted from discharge under 11 U.S.C. § 523(a)(6). We have jurisdiction under 28 U.S.C. § 158(d). We reverse.

## I.

The underlying facts of this case are undisputed. From June 1981 to January 1983, Petralia was employed by George Jercich, Inc., a real estate company wholly owned and operated by debtor Jercich. The company performed mortgage broker

services, and Petralia's primary duty was to obtain investors to fund loans arranged by Jercich. Pursuant to an employment agreement between Petralia and Jercich, Petralia was to be paid a salary plus a commission for loans which were funded through his efforts. The commissions were to be paid on a monthly basis.

Jercich failed to pay Petralia his commissions as required under the employment agreement. Petralia quit his employment with Jercich in January 1983 and in February 1983 filed an action against Jercich in California state court. In this action, Petralia sought to recover, among other things, unpaid wages, "waiting time penalties" (penalties imposed on employers under California law for failure to timely pay employees), and punitive damages.

After a bench trial, the state court granted judgment in favor of Petralia. The court found that Jercich had not paid Petralia commissions and vacation pay as required under the employment contract; that "Jercich had the clear ability to make these payments to Petralia, but chose not to"; that instead of paying Petralia and other employees the money owed to them, "Jercich utilized the funds from his company to pay for a wide variety of personal investments, including a horse ranch"; and that Jercich's behavior was willful and amounted to oppression within the meaning of California Civil Code § 3294.[1] The state court held, in relevant part, (1) that Petralia was entitled to his unpaid wages; (2) that Jercich owed Petralia waiting time penalties; and (3) that because Jercich's failure to pay was willful and deliberate and "constituted substantial oppression," punitive damages would be assessed against Jercich in the amount of $20,000.00. The state trial court's judgment against Jercich was affirmed by the

California Court of Appeal in an opinion filed in May 1986.

While the appeal of the state trial court judgment was pending, Jercich filed a Chapter 7 bankruptcy petition. In November 1986, after the state trial court judgment had been affirmed on appeal, Petralia initiated the present adversary proceeding seeking to have the state court judgment excepted from discharge under 11 U.S.C. § 523(a)(6).[2]

The bankruptcy court resolved the adversary proceeding in favor of Jercich. The court found that under the U.S. Supreme Court's decision in *Kawaauhau v. Geiger*,[3] "the state court . . . would have had to find that Mr. Jercich . . . did what he did with a specific intent, to use a criminal law term, of harming [Petralia]. But no such finding was made, nor can that conclusion be inferred from the findings that were made by the state court." The bankruptcy court therefore held that the debt was dischargeable.

BAP affirmed in a published opinion, but for different reasons than stated by the bankruptcy court. BAP held that "where a debtor's conduct constitutes both a breach of contract and a tort, the debt resulting from that conduct does not fit within § 523(a)(6) unless the liability for the tort is independent of the liability on the contract."[4] Defining a tort as "independent" only "if the conduct at issue would be tortious even if a contract between the parties did not exist," BAP concluded that there was not a tort independent of the contract and that the debt was not, therefore, excepted from discharge under § 523(a)(6).[5]

## II.

▮ "We review independently the decision of the bankruptcy court, showing

---

1. California Civil Code § 3294 allows imposition of exemplary (punitive) damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."

2. Section 523(a)(6) provides: "A discharge under . . . this title does not discharge an individual debtor from any debt . . . for willful

and malicious injury by the debtor to another entity or to the property of another entity."

3. 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

4. *In re Jercich*, 243 B.R. 747, 751 (9th Cir. BAP 2000).

5. *Id.*

no deference to the decision of the BAP. We review de novo the bankruptcy court's conclusions of law, and we review for clear error the bankruptcy court's findings of fact."[6]

## III.

Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity."[7] In *In re Riso*, we recognized that "a simple breach of contract is not the type of injury addressed by § 523(a)(6)"[8] and held that "[a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful *tortious conduct.*"[9]

By holding, in the present case, that the debt was not excepted from discharge un-

der § 523(a)(6), BAP imposed an additional requirement: not only must there be tortious conduct, but according to BAP, this conduct must be "tortious even if a contract between the parties did not exist."[10] We disagree with the imposition of this additional requirement.

First, there is nothing in the language of § 523(a)(6) to indicate that a debt arising from a breach of contract is excepted from discharge only if the debtor's conduct would be tortious even if no contract existed.[11] To the contrary, although § 523(a)(6) *generally* applies to torts rather than to contracts[12] and an intentional breach of contract *generally* will not give rise to a nondischargeable debt, where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6).[13]

6. *In re Kadjevich,* 220 F.3d 1016, 1019 (9th Cir.2000) (citation omitted).

7. 11 U.S.C. § 523(a)(6).

8. 978 F.2d 1151, 1154 (9th Cir.1992).

9. *Id.* (emphasis added) (citing *In re Moultrie,* 51 B.R. 368, 373–74 (Bankr.W.D.Wash.1985) (noting that "[o]nly debts arising from tortious acts are nondischargeable under § 523(a)(6)" but recognizing that acts involving "breach of contract . . . may also involve tortious acts such as interference with contract relations"); *In re Haynes,* 19 B.R. 849, 851 (Bankr.E.D.Mich.1982) ("[A] debt arising out of a mere breach of contract absent any showing that the purpose of the breach was to cause injury is not a non-dischargeable debt within the meaning of § 523(a)(6).")).

10. *In re Jercich,* 243 B.R. 747, 751 (9th Cir. BAP 2000).

11. Although some courts have used the term "independent tort" in analyzing whether a debt arising from a breach of contract is excepted from discharge under § 523(a)(6), see, e.g., *In re Akridge,* 71 B.R. 151, 154 (Bankr.S.D.Cal.1987), none of those courts have defined the term in the same manner as BAP-that a tort is independent only "if the conduct at issue would be tortious even if a contract between the parties did not exist." 243 B.R. at 751. For purposes of clarity, we avoid the use of the term "independent tort" and focus instead on whether the debtor en-

gaged in tortious conduct that resulted in willful and malicious injury.

12. 4 Collier on Bankruptcy ¶ 523.12 (15th ed. rev.2000).

13. *See Riso,* 978 F.2d at 1154; *In re Trammell,* 172 B.R. 41 (Bankr.W.D.Ark.1994) (excepting from discharge under § 523(a)(6) a debt arising out of a breach of the covenant not to compete); *In re Ketaner,* 149 B.R. 395 (Bankr.E.D.Va.1992) (same); *see also In re Smith,* 160 B.R. 549, 553–54 (N.D.Tex.1993) ("[I]t was not necessary for the bankruptcy court to find that [the debtors'] actions constituted an independent tort other than fraud in order to hold the [debt to the plaintiff] nondischargeable pursuant to § 523(a)(6). The bankruptcy court was only required to find that [the debtors'] willful and malicious conduct caused damage to the [plaintiff]."); *In re Moultrie,* 51 B.R. 368, 373–74 (Bankr.W.D.Wash.1985) (noting that "[o]nly debts arising from tortious acts are nondischargeable under § 523(a)(6)," but that acts involving breach of contract "may also involve tortious acts such as interference with contract relations"); *In re Haynes,* 19 B.R. 849, 851 (Bankr.E.D.Mich.1982) ("[A] debt arising out of a mere breach of contract absent any showing that the purpose of the breach was to cause injury is not a non-dischargeable debt within the meaning of § 523(a)(6)."); *In re Rivera,* 238 F.Supp. 233, 234 (S.D.N.Y.1965)

Moreover, one of the fundamental policies of bankruptcy law is to give a fresh start only to the "honest but unfortunate debtor." [14] In fact, Congress's decision to make the debts listed under § 523(a) nondischargeable "reflect[s] a decision by Congress that the fresh start policy is not always paramount. For example, some of the exceptions to discharge in § 523(a) are based on a corollary of the policy of giving honest debtors a fresh start, which would be to deny dishonest debtors a fresh start. See e.g., 11 U.S.C. §§ 523(a)(1), (2), (4), (6), and (12)." [15] Allowing discharge of debts simply because the tortious conduct at issue would not be tortious in the absence of a contract would negate this fundamental policy.

We therefore hold that to be excepted from discharge under § 523(a)(6), a breach of contract must be accompanied by some form of "tortious conduct" that gives rise to "willful and malicious injury." In so holding, we reject BAP's imposition of a requirement that the conduct at issue be

("[T]he theory of recovery—tort or contract— is immaterial [to the § 523(a)(6) inquiry].").

**14.** *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (noting that while the "fresh start" is "a central purpose of the [Bankruptcy] Code," this opportunity is limited to the " 'honest but unfortunate debtor' "); *In re Bugna,* 33 F.3d 1054, 1059 (9th Cir.1994) (same).

**15.** *In re Janc,* 251 B.R. 525, 543–44 (Bankr. W.D.Mo.2000).

**16.** *See In re Bailey,* 197 F.3d 997, 1000 (9th Cir.1999) ("While bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), this court looks to state law to determine whether an act falls within the tort of conversion.").

**17.** *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 460 (In Bank). At the time of the state court judgment, the breach of the covenant of good faith and fair dealing in employment contracts was deemed to also constitute a tort. Since that time, the California Supreme Court has held that tort remedies are not necessarily available for breach of the implied covenant of good faith and fair dealing in the employment setting. *Foley v. Inter-*

tortious even if a contract between the parties did not exist.

## IV.

### A. *Tortious Conduct*

■ To determine whether Jercich's conduct was tortious, we look to California state law.[16] Under California law, "[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law." [17]

■ Outside the area of insurance contracts, tort recovery for the bad faith breach of a contract is permitted only when, "in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state." [18] The California Court of Appeal has held that "the prompt payment of wages due an employee is a fundamental public policy" in California.[19] As that court explained:

*active Data Corp.,* 47 Cal.3d 654, 254 Cal. Rptr. 211, 765 P.2d 373, 401 (In Bank); *see Newman v. Emerson Radio Corp.,* 48 Cal.3d 973, 258 Cal.Rptr. 592, 772 P.2d 1059, 1060 (In Bank) (holding that the rule announced in "*Foley* is fully retroactive, applying to all cases not yet final as of January 30, 1989, the date the decision in *Foley* became final."). As discussed below, however, the breach at issue in this case—the willful nonpayment of wages—can constitute tortious conduct even under present California law.

**18.** *Rattan v. United Servs. Auto. Assoc.,* 84 Cal.App.4th 715, 101 Cal.Rptr.2d 6, 11; *see Applied Equip.,* 28 Cal.Rptr.2d 475, 869 P.2d at 460 (noting that California law imposes an obligation binding every person "to abstain from injuring the person or property of another, or infringing upon any of his rights"; that this "duty is independent of the contract"; and that the "omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty") (citations, quotations and ellipses omitted).

**19.** *Gould v. Maryland Sound Indus., Inc.,* 31 Cal.App.4th 1137, 37 Cal.Rptr.2d 718, 723 (holding that discharge to avoid payment of wages is cognizable in tort as a wrongful discharge).

Public policy has long favored the full and prompt payment of wages due an employee. Wages are not ordinary debts. Because of the economic position of the average worker and, in particular, his family, it is essential to the public welfare that he receive his pay promptly. Thus, the prompt payment of wages serves society's interest through a more stable job market, in which its most important policies are safeguarded.

Labor Code section 216, subdivision (a) provides any employer who, having the ability to pay, willfully refuses to pay wages due and payable after demand has been made is guilty of a misdemeanor. The Legislature's decision to criminalize violations of the prompt payment policy also supports [the conclusion that the policy for full and prompt payment of wages] involves a broad public interest, not merely the interest of the employee.[20]

■ In the present case, the state trial court found that Jercich had the "clear ability" to pay Petralia his wages when they were due, but willfully "chose not to" in violation of California law.[21] The court also found that Jercich's acts amounted to oppression under California Civil Code § 3294, which by definition must involve "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."[22] As the court explained: "Few, if any, areas of the law are more important than an employer's obligation to pay his employee's

wages. California courts agree, and have time and again underscored the significance of an employer's failure to pay wages."

Based on these state court findings, we hold that Jercich's nonpayment of wages under the particular circumstances of this case constituted tortious conduct.

### B. *Willful and Malicious Injury*

#### 1. *Willfulness*

Citing *Kawaauhau v. Geiger*,[23] Jercich argues, and the district court held, that to meet the willfulness prong of § 523(a)(6), Jercich had to have withheld the wages with the "specific intent" of harming Petralia. We disagree.

In *Geiger*, the U.S. Supreme Court held that debts arising out of a medical malpractice judgment, i.e., "debts arising from reckless or negligently inflicted injuries," do not fall within § 523(a)(6)'s exception to discharge.[24] In so holding, the Court clarified that it is insufficient under § 523(a)(6) to show that the debtor *acted* willfully and that the injury was negligently or recklessly inflicted; instead, it must be shown not only that the debtor *acted* willfully, but also that the debtor inflicted the *injury* willfully and maliciously rather than recklessly or negligently.[25]

In *Geiger*, the Court did not answer the question before us today—the precise state of mind required to satisfy § 523(a)(6)'s "willful" standard. The *Geiger* Court did, however, cite with approval its prior decision of *McIntyre v. Kavanaugh*[26] and the Restatement (Second) of

---

**20.** *Id.* at 723–24 (quotations, citations and ellipses omitted).

**21.** The state court specifically cited California Labor Code § 203, which provides in relevant part:

> If an employer willfully fails to pay ... any wages of an employee who ... quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Labor Code § 203. From the state court's findings, it is clear that Jercich also violated California Labor Code § 216, which makes it a misdemeanor for an employer,

having the ability to pay, to willfully refuse to pay wages due and payable after demand for the wages has been made.

**22.** Cal. Civil Code § 3294(c)(2); *Applied Equip.*, 28 Cal.Rptr.2d 475, 869 P.2d at 461.

**23.** 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

**24.** *Id.* at 59, 64.

**25.** *See id.* at 64.

**26.** 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).

Torts § 8A, cmt. A, p. 15 (1964).

In *McIntyre,* the debt arose from the debtor's conversion of the creditor's property. Holding that this debt was excepted from discharge under § 523(a)(6), the Court indicated that a wrongful act that is voluntarily committed with knowledge that the act is wrongful and will necessarily cause injury meets the "willful and malicious" standard of § 523(a)(6).[27] Similarly, the Restatement definition of intent cited by the *Geiger* Court requires the actor either to desire the consequences of an act or to know the consequences are substantially certain to result. Under this definition, the actor's deliberate act with knowledge that the act is substantially certain to cause injury is sufficient to establish willful intent.[28]

This definition is consistent with the approach this court took in the post-*Geiger* case of *In re Bailey,*[29] where we stated that "[t]he conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of § 523(a)(6)."[30] Similarly, the Fifth Circuit has held *Geiger* to be satisfied where "the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury."[31] In other words, under the Fifth Circuit's approach, an injury is "willful" under § 523(a)(6) if the debtor's motive was to inflict the injury *or* the debtor's act was substantially certain to result in injury.[32]

The Sixth Circuit has also held, post-*Geiger,* that a debtor must will or desire the harm, or believe that injury is substantially certain to occur as a result of his behavior before a resulting debt will be excepted from discharge under § 523(a)(6).[33] Finally, at least one Ninth Circuit BAP panel has held that either substantial certainty that injury will result or subjective motive to inflict injury meets the post-*Geiger* requirement of "willful injury" under § 523(a)(6).[34]

 We hold, consistent with the approaches taken by the Fifth and Sixth Circuits, that under *Geiger,* the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct. We believe that this holding comports with the purpose bankruptcy law's fundamental policy of granting discharges only to the honest but unfortunate debtor.[35]

 Application of this standard to the state court's factual findings demonstrates that the injury to Petralia was willful. As the state court found, Jercich knew he owed the wages to Petralia and that injury to Petralia was substantially certain to oc-

27. *Id.* at 141–42.

28. *See id.*

29. 197 F.3d 997, 1000 (9th Cir.1999).

30. *Id.* at 1000 (quoting *Transamerica Comm. Fin. Corp. v. Littleton,* 942 F.2d 551, 554 (9th Cir.1991)).

31. *In re Miller,* 156 F.3d 598, 604 (5th Cir. 1998).

32. *Id.*

33. *In re Markowitz,* 190 F.3d 455, 465 n. 10 (6th Cir.1999). The Sixth Circuit noted, however, that it is not enough that the debtor *should have known* his decisions and actions put another at risk for injury; rather, to be excepted from discharge under § 523(a)(6), the debtor must actually will or desire the harm or have knowledge that the harm is substantially certain to occur. *Id.*

34. *In re Baldwin,* 245 B.R. 131, 136 (9th Cir.BAP 2000).

35. Moreover, imposing a specific intent requirement as urged by Jercich would produce absurd results that could not possibly have been intended by Congress. For example, if a showing of specific intent were required, a debtor could sell, without consequence, collateral subject to a security agreement with the knowledge that such an act violates the security agreement as long as the debtor did not have the specific intent to injure the creditor but instead had the specific intent to get the money for the debtor's own use.

cur if the wages were not paid; and Jercich had the clear ability to pay Petralia his wages, yet chose not to pay and instead used the money for his own personal benefit. He therefore inflicted willful injury on Petralia.

### 2. *Maliciousness*

A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." [36] In the present case, the state court found Jercich knew he owed Petralia the wages and that injury to Petralia was substantially certain to occur if the wages were not paid; that Jercich had the clear ability to pay Petralia the wages; and that despite his knowledge, Jercich chose not to pay and instead used the money for his own personal benefit. Jercich has pointed to no "just cause or excuse" for his behavior. Moreover, Jercich's deliberate and willful failure to pay was found by the state trial court to constitute substantial oppression under California Civil Code § 3294, which by definition is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." [37] We hold that these state court findings are sufficient to show that the injury inflicted by Jercich was malicious under § 523(a)(6).

### V.

The debt in this case arose from willful and malicious injury caused by the debtor's tortious conduct. It is therefore excepted from discharge under 11 U.S.C. § 523(a)(6).

REVERSED.

**36.** *In re Bammer,* 131 F.3d 788, 791 (9th Cir.1997) (en banc) (quotations omitted); *see Bailey,* 197 F.3d at 1000 (making it clear that our maliciousness standard—and in particular our "just cause and excuse" prong—survived *Geiger*); *but see In re Miller,* 156 F.3d at 606(Fifth Circuit holding that the "just cause or excuse" standard has been displaced by *Geiger* and collapsing the "willful" and "malicious" prongs into a single inquiry).

**37.** Cal. Civ.Code § 3294(c)(2).