*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  08b0004n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   PAUL M. NEWMAN,<br>             Debtor.<br>_____<br><br>EILEEN M. OLMSTEAD,<br><br>           Plaintiff-Appellant,<br><br>v.<br><br>PAUL M. NEWMAN,<br><br>           Defendant-Appellee.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 07-8050 |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee, at Nashville.
No. 3:05-14139, 3:06-0181A.

Argued:  February 5, 2008

Decided and Filed:  March 28, 2008

Before:  FULTON, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** James D. R. Roberts, Jr., ROBERTS & LAYMAN, Nashville, Tennessee, for Appellant.
Steven L. Lefkovitz, LEFKOVITZ & LEFKOVITZ, Nashville, Tennessee, for Appellee.  **ON
BRIEF:** James D. R. Roberts, Jr., Janet L. Layman, ROBERTS & LAYMAN, Nashville, Tennessee,
for Appellant.  Steven L. Lefkovitz, LEFKOVITZ & LEFKOVITZ, Nashville, Tennessee, for
Appellee.

---

**OPINION**

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. Eileen Olmstead ("Olmstead") appeals from an order of the bankruptcy court finding that a debt owed to her by her former employer, Paul Newman (the "Debtor"), is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Specifically, Olmstead challenges the bankruptcy court's finding that the Debtor's failure to pay accrued vacation benefits to her was not malicious. For the reasons stated below, we AFFIRM the bankruptcy court's decision.

## I. ISSUES ON APPEAL

The issue before the Panel is whether the bankruptcy court's finding that the Debtor's conduct was not malicious is clearly erroneous.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). "A bankruptcy court's judgment determining dischargeability is a final and appealable order." *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp. (In re Hertzel)*, 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo. *In re Fox*, 370 B.R. at 109 (citing *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000)). De novo review requires the "appellate court [to determine] the law independently of the trial court's determination." *Id.* (quoting *O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)*, 338 B.R. 307, 310 (B.A.P. 6th Cir. 2006)).

However, "[t]he factual findings underlying the bankruptcy court's dischargeability ruling are upheld on appeal unless they are clearly erroneous." *Id.* (citing *In re Hertzel*, 329 B.R. at 225 and *Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005) (dischargeability determinations present mixed questions of law and fact; the bankruptcy court's conclusions of law are reviewed de novo, while findings of fact are reviewed for clear error)). A bankruptcy court's findings of fact should not be disturbed simply because another trier of fact might construe the facts differently or reach a different conclusion. *See Andersen v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). A factual determination should be upheld unless "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Bailey*, 254 B.R. at 903.

## III.   FACTS

The Debtor owned and operated an animal hospital in California and Olmstead began working for the Debtor at the animal hospital in 1984. (Apx. at 4, 13.) In February 2001, Olmstead was paid $250 per day and had accrued 23.66 unused vacation days. (Apx. at 273.) The Debtor's vacation policy required employees to use their vacation time and did not allow employees to receive payment in lieu of taking vacation. (Apx. at 192.)

In February 2001, pursuant to a written agreement (the "Sale Contract"), Debtor sold substantially all of the assets of the animal hospital to Dr. Makar and Dr. Guirgis (collectively, the "Buyer"). (Apx. at 238.) Paragraph 18 of the Sale Contract gave the Buyer the option of re-hiring any employees of the Debtor who were terminated as a result of the sale. (*See* Apx. at 98.) However, paragraph 18 of the "Final Draft" of the Sale Contract required the Buyer to be responsible for accrued benefits. (Apx. at 98.) The Debtor testified that he negotiated for the Buyer's assuming responsibility for all employee benefits in exchange for a reduced sale price for the business (Apx. at 191 - "I gave money to Dr. Makar to disburse to my employees over the following year as they took their vacation.").

The sale closed on or about February 21, 2001 and Olmstead was terminated as an employee of the Debtor. (Apx. at 116, 228, 238.) It is undisputed that Olmstead was rehired immediately by the Buyer. At some point following the sale, Olmstead became concerned about her vacation benefits and she inquired of the Debtor. (Apx. at 121.) The Debtor suggested she speak with the Buyer

because "Dr. Makar had agreed, by contract, to assume all the accrued benefits so that employees could take their vacations that they had accrued and get paid for them, instead of receiving payment in lieu of vacation." (Apx. at 121, 185.) When the Buyer refused to pay her for the vacation days, Olmstead, at the Debtor's suggestion, filed a complaint with the California Labor Commissioner (the "Commissioner"). (Apx. at 121-24.)

The Commissioner held a preliminary hearing on the complaint in July 2001. (Apx. at 125.) The Commissioner stayed the matter because there was pending litigation between the Debtor and the Buyer and because Olmstead was employed by the Buyer. (Apx. at 128.) In October 2002, the Debtor wrote a letter to the Commissioner indicating that there was no pending litigation over the responsibility for employee benefits. (Apx. at 244.) In March 2003, for health reasons, Olmstead terminated her employment with the Buyer. (Apx. at 139.) She again spoke with the Buyer about being paid for unpaid vacation days and he suggested she take the matter to the Commissioner. (Apx. at 140.) Olmstead sent the Debtor an email informing him that she had terminated her employment with the Buyer and that she was going back to the Commissioner regarding the unpaid vacation days. (Apx. at 139-40.)

The Commissioner re-opened Olmstead's case and scheduled a hearing. The hearing was held on December 12, 2003. (Apx. at 271.) A representative of the Buyer attended that hearing. (Apx. at 271.) Although the Debtor did not attend the hearing, he had sent a letter to the Commissioner attaching an affidavit regarding the facts of the case and copies of the two contracts associated with the sale of the hospital. (Apx. at 273.)

The Commissioner rendered his decision on December 15, 2003, which was mailed to Olmstead on December 23, 2003. (Apx. at 271-77.) In the decision, the Commissioner found that pursuant to § 202 of the California Labor Code (the "Labor Code"), the Debtor was responsible for paying "all wages due at the time of termination," which the Commissioner calculated by multiplying Olmstead's 23.66 days of unused vacation at the time of her termination by the Debtor by her $250.00 per day pay rate and adding interest. (Apx. at 271-75.) The Commissioner also awarded penalties pursuant to Labor Code § 203 for "willful" failure to pay wages. (Apx. at 274.) In doing so, the Commissioner specifically noted that "the term 'willful' as used in Labor Code § 203, does not require malice. (Apx. at 274.) It requires only that "the employer knew or should have known of the

duty to act and volitionally failed to perform the act." (Apx. at 274.) The Commissioner further noted that the Debtor did not appear at the hearing to present a "good faith argument." (Apx. at 274.) In total, the Commissioner assessed liability for $13,914.12 against the Debtor. (Apx. at 268, 271-75.)

Olmstead sent an email to the Debtor on December 26, 2003, informing him of the Commissioner's decision. (Apx. at 255-56.) The Debtor responded by email later that day. He told Olmstead that he would not "pay for something that Makar is responsible for" and that he planned to appeal the decision. (Apx. at 255.) He also told Olmstead that he had moved from California "because I am going broke," indicated that he could not afford to pay her and outlined certain details of his poor financial situation, including that he had consulted a bankruptcy attorney. (Apx. at 255.) The Debtor had in fact moved from California to Tennessee in November 2003, purchasing a home with a down payment of approximately $144,000.00 cash received from the sale of the Debtor's home in California. (Apx. at 202.) At the time that he purchased the home in Tennessee, the Debtor also obtained a home equity line of credit for $119,000.00. (Apx. at 203.) The Debtor also testified that he had, by the time the Commissioner rendered his decision, spent most of the money that he obtained from the sale of his animal hospitals or lost it in the stock market. (Apx. at 206-09.) He also testified that he still owed approximately $400,000.00 to a Dr. Reichold, his former partner in one of his hospitals, for buying that partner out in 2001, and that he was required to make payments of $5,500.00 per month on that debt. (Apx. at 207.) The Debtor also testified that he was no longer actively engaged in veterinary practice at the time–"I was not making the kind of money I made when I worked, and – which is one of the reasons we had to sell." (Apx. at 208.)

Later the same day, the Debtor sent another email to Olmstead informing her that he had now received and read a copy of the Commissioner's decision and that he was not going to appeal the decision for a variety of reasons, including his present financial difficulties. (Apx. at 259.) Thereafter, the Debtor and Olmstead communicated by email several more times, with the tone of the Debtor's emails becoming less and less cordial. (Apx. at 262-64.)

In accordance with California law, the Commissioner's decision was filed as a judgment with the California Superior Court on April 30, 2004. (Apx. at 10.) Olmstead filed a motion with the California Superior Court asking that the damages set forth in that judgment be tripled because of the Debtor's willful failure to pay them. (Apx. at 7.) That court granted Olmstead's motion on July 27,

2005, making the amount owed by the Debtor to Olmstead approximately $48,000.00 plus interest at 10% per year. (Apx. at 7-8.)

The Debtor filed his Chapter 7 petition on October 14, 2005. Olmstead filed her adversary proceeding against the Debtor on May 15, 2006. A trial on the merits was held on July 13, 2007, and the bankruptcy court entered its Order dismissing Olmstead's case with prejudice on August 3, 2007. Olmstead timely filed her notice of appeal on August 10, 2007.

## IV.    DISCUSSION

Section 523(a)(6) excepts from discharge "any debt – for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The requirements of willful and malicious are distinct and both must be met. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d. 455, 463 (6th Cir. 1999); *South Atlanta Neurology & Pain Clinic P.C. v. Lupo* (*In re Lupo*)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). Olmstead, as the objecting party, bears the burden of proving both requirements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

For a debt to fall within the purview of "willful and malicious injury," § 523(a)(6) requires more than an intentional act that causes injury; it requires an act done with the intent to injure, e.g., a deliberate injury akin to an intentional tort. *See Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998). As used in § 523(a)(6),

> The word "willful" ... modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. ... [A] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended. ... Every traffic accident stemming from an intentional act. ... A "knowing breach of contract" could also qualify. *See ibid.* A construction so broad would be incompatible with the "well known" guide that exceptions to discharge should be confined to those plainly expressed.

*Id.* at 977 (citations omitted). At trial, the parties stipulated that the Debtor's "actions were willful" based on the findings of the Superior Court of California. The bankruptcy court accepted the parties' stipulation and did not address this element further.

The injury must not only be willful, but it must be malicious as well. Olmstead has the burden of proving malicious injury. For purposes of § 523(a)(6), an injury is malicious when the debtor "acts in conscious disregard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (B.A.P. 6th Cir. 2000). That is, an injury is "malicious" under § 523(a)(6), when it is: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001); *Jett v. Sicroff* (*In re Sicroff*), 401 F.3d 1101, 1106 (9th Cir. 2005). "[T]he definition of malice requires a heightened level of culpability transcending mere willfulness." *Superior Metal Prods. v. Martin (In re Martin),* 321 B.R. 437, 442 (Bankr. N.D. Ohio 2004). Behavior can be willful, but fall short of being malicious. *Id.*, 321 B.R. at 442 (*citing John Deere Credit Service v. McLaughlin (In re McLaughlin*), 109 B.R. 14, 18 (Bankr. N.D. N.H. 1989) (finding conversion to be willful, but not malicious)).

Olmstead argues that there were two instances that gave rise to malicious injury. First, the Debtor's failure to pay accrued vacation benefits at the time he sold his practice. Second, the Debtor's failure to pay the judgment against him. The bankruptcy court found with respect to the first, that the Debtor "earnestly believed Dr. Makar had assumed responsibility for payment of plaintiff's benefits. [fn omitted] ... The fact that ... [the Debtor] turned out to be incorrect does not convert his actions to malicious conduct." Regarding the second, the bankruptcy court found the Debtor did not have the ability to pay the judgment and therefore, his conduct was not malicious.

Olmstead relies primarily on the Ninth Circuit decision in *Jercich*, 238 F.3d 1202, for the proposition that the bankruptcy court erred in finding the Debtor did not act maliciously. However, *Jercich* is distinguishable from the present case. First, the state court judgment in *Jercich* is based on a section of the California Civil Code that provides for the award of punitive damages upon proof "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." *Id.* at 1204. In *Jercich*, the court found that the debtor's conduct was "willful and deliberate" and "constituted substantial oppression." *Id.* In this case, the state court award is for "willful" conduct only. There are no findings of oppression, fraud or malice. Second, the Ninth Circuit found that the debtor pointed to "no just cause or excuse" for his behavior. *Jercich*, 238 F.3d at 1209. The Ninth Circuit in *Jercich* did not address what facts would constitute "just cause or excuse." In this case, the

Debtor pointed to his sincere belief that he did not owe the money and his inability to pay the money, by the time the judgment was rendered against him as just cause.

To determine whether there is "just cause or excuse", a court "must look ... to the surrounding circumstances to divine whether there was some legitimate (or equitable) justification for the debtor's conduct." *American Honda Fin. Corp. v. Grier* (*In re Grier*), 124 B.R. 229, 232 (Bankr. W.D. Tx. 1991). Black's Law Dictionary (6th ed.) defines "just cause" as "cause outside legal cause, which must be based on reasonable grounds, and there must be a fair and honest cause or reason, regulated by good faith." Similarly, the dictionary definition of just includes "honorable and fair in dealings and actions." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997).

In this instance, the bankruptcy court found the Debtor held an "earnest belief" that Buyer was responsible for the vacation benefits owed to Olmstead and that Debtor "had acted in good faith" in his dealings with Olmstead. (Apx. at 27.) Olmstead, through various email exchanges (as noted by the bankruptcy court) agreed with the Debtor's position with respect to liability for accrued vacation benefits. Further, Olmstead went to work for Buyer and continued to receive wages and vacation benefits from them. It was not until her employment with Buyer had terminated that she was able to pursue her claim with the Labor Board. Because the Debtor did not appear at the hearing before the Commissioner, the decision did not address any defense the Debtor may have had under Labor Code § 203. Olmstead has not pointed to anything in the record or the law to support a finding that the attempt to make Buyer contractually responsible for payment of accrued vacation benefits was impermissible or that the Debtor's reliance on it caused "malicious injury" to Olmstead.

Based on the record before us, we are not left with the definite and firm conviction that the bankruptcy court's finding that, based on paragraph 18 of the Sale Contract, the Debtor had a legitimate justification at the time the debt was incurred (the sale of the animal hospitals) for not paying the debt was clearly erroneous.

Further, we are not left with the definite and firm conviction that the bankruptcy court erred in finding that, by the time the Commissioner entered his decision, the Debtor did not have the ability to pay it. The Debtor's testimony regarding his financial situation at the end of 2003 was uncontradicted. Olmstead has not pointed to anything in the record that makes the bankruptcy court's finding clearly erroneous.

## V.   CONCLUSION

Based on the foregoing, the Panel AFFIRMS the bankruptcy court's opinion and order finding the debt dischargeable and dismissing Olmstead's complaint.