

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PIETRO CIMINO,<br><br>                    Debtor. | BAP No. NV-21-1057-TLG<br><br>Bk. No. 2:19-bk-17655-ABL |
| PIETRO CIMINO,<br>                    Appellant,<br>v.<br>LEONARD INDELICATO, individually,<br>as Trustee of the L.A. Indelicato Trust<br>Dated 8-12-13, as Trustee of the Survivors<br>Trust Under the Indelicato Revocable<br>Trust, Dated 1-14-02, and as Trustee of the<br>Exemption Trust Under the Indelicato<br>Revocable Trust, Dated 1-14-02,<br>                    Appellee. | Adv. No. 2:20-ap-01040-ABL<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
August Burdette Landis, Chief Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, AND GAN, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Leonard Indelicato[1] obtained stay relief in Pietro Cimino's bankruptcy case and then obtained a state court judgment (the "Judgment") based on claims of fraud and conversion. The award of actual damages was enhanced under a Nevada statute that allows attorneys' fee recovery and doubled damages for exploiting the elderly and converting or obtaining control over their assets. Mr. Indelicato then relied on the Judgment and issue preclusion to obtain summary judgment on a non-dischargeability complaint, and the bankruptcy court determined that the Judgment was nondischargeable under § 523(a)(2)(A) and (a)(6).[2] We AFFIRM.

## FACTS[3]

On June 3, 2019, Mr. Indelicato filed a complaint in the Nevada state court commencing a civil action against Mr. Cimino, his wholly owned limited liability company, Castle Rock Holdings, LLC ("Castle Rock"), and others. Mr. Indelicato raised claims against Mr. Cimino for fraud, civil conspiracy, unjust enrichment, breach of confidential or fiduciary duty, and conversion. Mr. Indelicato alleged that Mr. Cimino fraudulently

---

[1] Mr. Indelicato brought this action in his individual capacity and as a trustee of various trusts. The state court judgment at issue referred to Mr. Indelicato in his individual and trustee capacities collectively as the "Plaintiff." We refer to "Mr. Indelicato" herein in this same collective manner where common sense so requires.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the docket. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

induced him to transfer real property assets into an alleged joint venture and also fraudulently converted $80,000 based on lies and without any intent to use the assets for the benefit of Mr. Indelicato.[4]

Because Mr. Indelicato was in his 80s, he requested and received a preferential trial setting. But the state court defendants then put barriers in the way of prompt resolution. First, Castle Rock filed a chapter 11 case. Mr. Indelicato promptly obtained relief from stay, Castle Rock appealed, and the District Court dismissed the appeal for lack of prosecution.

While the appeal was pending, and, given that Castle Rock did not seek a stay pending appeal, the state court again scheduled trial. This time, however, it was Mr. Cimino who filed a bankruptcy case. Mr. Indelicato again sought and obtained stay relief to allow the trial to proceed in the state court. Mr. Cimino did not appeal from this order, and a jury trial commenced on December 5, 2019. On December 30, 2019, the jury rendered its verdict. The Judgment followed.

As relevant here, the jury found Mr. Cimino liable for $80,000 plus interest based on Mr. Indelicato's fraud and conversion claims. It also

---

[4] More specifically he alleged that: Mr. Cimino used their shared Sicilian heritage as a door-opener and then fraudulently represented that he had Arizona real property worth $4,000,000 after development and that his friend, Mr. Balsom, had access to funding. He then induced Mr. Indelicato to transfer Nevada real property worth $3,200,000 to a limited liability company. Mr. Indelicato got a one third interest in the LLC. But the Arizona real property Mr. Cimino transferred to the LLC was worth less than $100,000 before consideration of tax liens and the "funding" was an illusion. Mr. Cimino also alleged that Mr. Indelicato fraudulently induced him to invest $80,000 in a restaurant based on false representations.

found that punitive damages of $210,000 were appropriate in connection with the fraud claim. Finally, it determined that the conversion constituted elder abuse.

Nevada law provides:

> If an older person . . . suffers a personal injury or death that is caused by abuse or neglect or suffers a loss of money or property caused by exploitation, the person who caused the injury, death or loss is liable to the older person . . . for two times the actual damages incurred by the older person.

Nev. Rev. Stat. Ann. ("NRS") 41.1395 (1).

Further, "[i]f it is established by a preponderance of the evidence that a person who is liable for damages . . . acted with recklessness, oppression, fraud or malice, the court shall order the person to pay the attorney's fees and costs of the person who initiated the lawsuit." NRS 41.1395 (2).

After the jury's decision, the state court awarded Mr. Indelicato attorneys' fees of $232,149.00 and costs of $31,264.41 and doubled the monetary damages flowing from the conversion. The Judgment thus totaled $666,463.41 plus interest.[5]

Thereafter, the bankruptcy court converted Mr. Cimino's chapter 13 case to a case under chapter 7, and Mr. Indelicato filed a timely complaint seeking that the Judgment be declared nondischargeable under § 523(a)(2)(A), (4), & (6). Eventually, Mr. Indelicato filed a summary

---

[5] In addition, the Judgment rescinded the grant deeds obtained through fraud.

judgment motion based on the application of issue preclusion.[6] Mr. Cimino opposed in a late filed opposition.

After hearing, the bankruptcy court denied a motion to strike Mr. Cimino's late filed and improperly filed documents, denied summary judgment under § 523(a)(4), and granted it under § 523(a)(2)(A) & (a)(6).[7]

Mr. Cimino timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in granting summary judgment on Mr. Indelicato's § 523(a)(2)(A) claim based on issue preclusion?

Did the bankruptcy court err in granting summary judgment on Mr. Indelicato's § 523(a)(6) claim based on issue preclusion?

---

[6] We acknowledge that the bankruptcy court also found claim preclusion applicable; we disagree. Nondischargeability was not before the state court. And while claim preclusion can apply as to claims actually litigated and all grounds for recovery that could have been asserted on a claim or that could be litigated, *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 711 (Nev. 2008), the § 523 claims were not before the Nevada state court, and they do not constitute a "ground for recovery" under the state court fraud, conversion, and elder abuse claims. This error, however, was harmless. In any event, claim preclusion also appears inapplicable based on the scope of stay relief which authorized the litigation of the state court action as pending; litigation of nondischargeability was not authorized.

[7] Mr. Indelicato subsequently dismissed his § 523(a)(4) claim.

5

## STANDARDS OF REVIEW

We review de novo a bankruptcy court's grant of summary judgment and exception of a debt from discharge under § 523. *Black v. Bonnie Springs Fam. Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013).

We also review de novo a bankruptcy court's determination that issue preclusion is available. *Id*. If issue preclusion is available, we review its application for an abuse of discretion. *Id*. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact on the claims and the moving party is entitled to judgment as a matter of law. *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000). A properly supported summary judgment motion, however, cannot be defeated by the mere existence of some alleged factual dispute. *Id*. Only disputes over facts that might affect the outcome of the lawsuit may defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The bankruptcy court may grant summary judgment in a dischargeability proceeding based on the issue preclusive effect of a state

court judgment. *Grogan v. Garner*, 498 U.S. 279, 284-85 & n.11 (1991). It "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the Judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

And the party asserting issue preclusion must prove all the criteria for its application by introducing a record sufficient to reveal the controlling facts and the exact issues litigated in the first suit. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995). Reasonable doubt as to what was decided in the first suit will weigh against applying issue preclusion. *Id*.

Here, the applicable state law of issue preclusion is that of Nevada. Under that state's law, four elements must be established for issue preclusion to apply. First, the issue decided in the prior litigation must be identical to the issue presented in the current action; second, the initial ruling must have been on the merits and have become final; third, the party against whom the Judgment is asserted must have been a party or in privity with a party to the prior litigation; and finally, the issue must be actually and necessarily litigated. *Five Star Cap. Corp.*, 194 P.3d at 713.

On appeal, Mr. Cimino generally objects to the bankruptcy court's decision to allow the state court trial to go forward, its lifting of the stay to accommodate this, and the failure of the bankruptcy court to allow him a second trial. None of these assertions justify reversal.

7

First, the stay relief order is not before us on appeal. That decision became final and nonappealable well before appeal from the summary judgment. For purposes of this appeal, the Panel must and does assume that stay relief was appropriately granted.

Given this assumption, the Panel evaluates the application of issue preclusion and, in so doing, takes into consideration that the doctrine of issue preclusion is specifically designed to ensure that retrials are limited to circumstances where a prior court decision is ambiguous or where all elements of a claim for relief are not established by application of issue preclusion. Thus, a court generally should apply issue preclusion to avoid inconsistent results, preserve judicial economy and efficiency, and to further comity and respect for the state courts. Where appropriately applied, issue preclusion is a doctrine that necessarily and appropriately precludes retrial of issues already determined by another court.

Here the record supports that the second, third, and, in part, the fourth elements of issue preclusion are not in question. The Judgment arose from a jury trial and it is now final. Second, Mr. Cimino was a party to the state court litigation and is named in the Judgment, Third, the Judgment results from actual litigation of claims of fraud, conversion, and elder abuse. Any issue as to the necessity of the precise determinations on which the bankruptcy court based its issue preclusion ruling are resolved when one considers the identity of the issues element as discussed below. In order to render the Judgment, the jury or state court was required to make

each of the determinations necessary to thereafter support a determination of nondischargeability based on issue preclusion.

### A. The issues were indentical.

Issue preclusion requires a comparison of the issues presented in the bankruptcy case and in the state court action. The bankruptcy court held that the Judgment constituted a nondischargeable debt under § 523(a)(2)(A) (fraud) and § 523(a)(6), which exempts from discharge a debt arising as a result of "willful and malicious injury by the debtor to another entity or to the property of another entity."

**Fraud under § 523(a)(2)(A).** Section 523(a)(2)(A) provides that:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt - . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Thus, in the Ninth Circuit, to prove actual fraud, a creditor must establish each of the following elements:

(1) that the debtor made the representations;
(2) that at the time he knew they were false;
(3) that he made them with the intention and purpose of deceiving the creditor;
(4) that the creditor relied on such representations; [and]
(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Britton v. Price (In re Britton),* 950 F.2d 602, 604 (9th Cir. 1991); *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh),* 973 F.2d 1454, 1457 (9th Cir. 1992). The reliance required under the fourth element must be justifiable. *Fields v. Mans,* 516 U.S. 59, 74-75 (1995).

As the bankruptcy court correctly noted, the elements of a fraud claim under Nevada law and under § 523(a)(2)(A) are qualitatively identical. This fact is well illustrated by the jury instructions which detail the findings that the jury was required to make in connection with its determination that Mr. Cimino committed fraud.

The jury instructions stated as follows:

Jury Instruction No. _____ (Fraudulent Misrepresentation or Promise)

In order to establish a claim of fraud, Plaintiff must establish by clear and convincing evidence:

1.    A false representation made by a defendant;

2.    The defendant's knowledge or belief that his representation was false, the defendant did not intend to perform as promised, or that the defendant had an insufficient basis of information for making his representation;

3.    The defendant intended to induce Plaintiff to act or refrain from acting upon the representation;

4.    Plaintiff justifiably relied upon the truth of the defendant's representation; and

5.    There was damage as a result of relying on the representation.

A false representation may be an intentional representation, a false promise, or a representation that is misleading because it partially suppresses or conceals information. Further, if a defendant is bound in good faith to

10

disclose material facts to the Plaintiff, the suppression or omission of a material fact is the equivalent to a false representation since the failure to disclose constitutes an indirect representation that such fact does not exist.

*See also*, Nevada Jury Instructions 10.1-10.3 (modified). The jury instruction is consistent with Nevada law. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

So, here the jury made each of the findings required for a determination of fraud under § 523(a)(2)(A) when it determined that Mr. Cimino defrauded Mr. Indelicato and returned its fraud judgment for $80,000. The jury also necessarily decided each of these issues; it could not determine that fraud occurred without reaching a decision as to each of the elements.

The fact that the Judgment awarded the $80,000 based on conversion is of no moment. The jury found the $80,000 recoverable under two theories – it could not be recovered twice. And the Judgment otherwise includes an award based directly on fraud; the punitive damages award flows from it. And punitive damages awarded on account of nondischargeable fraud are themselves nondischargeable *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).

**Willful and malicious injury under § 523(a)(6).** In connection with § 523(a)(6), the statute requires that the debtor commit a tort or a tort-like

statutory violation. Here, the jury's finding of conversion satisfies the requirement of an improper or unlawful act.

The more difficult determination under § 523(a)(6), however, is the required findings of willfulness and malice. The "willful" injury and "malicious" injury requirements of § 523(a)(6) are separate and distinct. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Id*. at 1146-47 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

As the jury instructions make clear, the jury was not required to find a state of mind akin to willfulness or malice when it found that Mr. Cimino converted Mr. Indelicato's assets.

The jury instructions provided:

Jury Instruction No. _____ (General Intent)
    Conversion does not require a finding of wrongful intent and it is not excused by care, good faith, or lack of knowledge.

Jury Instruction No. _____ (Conversion)
    Plaintiff has asserted a conversion claim against defendants Peter Cimino, Castle Rock Holdings, LLC and Castle Rock Bar & Grill, LLC with respect to $80,000.00.

12

To find that any of these defendants have converted Plaintiff's property, you must find that the defendant committed "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title rights."

Thus, conversion may occur even if the defendant acts with good faith. *See Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958).

But the conversion determination here was not decided in a vacuum. It was coupled with a determination that the conversion constituted elder abuse, and the acts of conversion also were coupled with a fraud judgment based on the same facts. These additional findings support application of issue preclusion as to the § 523(a)(6) claim.

First, the "elder abuse" jury instruction reads as follows:

Jury Instruction No. _____ (NRS 41.1395- Liability)

Nevada's legislature passed a law prohibiting exploitation of an older person.

To establish liability for exploitation of Plaintiff, you must find that:

1) Plaintiff was over 60 years of age when he was exploited and suffered a loss of money or property; and

2) Plaintiff was exploited by a defendant.

"Exploited" means any act taken by a person who has the trust and confidence of an older person to:

1.    Obtain control, through deception, intimidation, or undue influence, over the money, assets, or property of the older person with the intention of permanently depriving the older person of the ownership, use, benefit, or possession of that person's money, assets, or property; or

13

> 2. Convert money, assets, or property of the older person with the intention of permanently depriving the older person of the ownership, use, benefit, or possession of that person's money, assets, or property.

*See also*, NRS 41.1395(1) & (4)(b),(d).

The application of the NRS 41.1395 multiplier and award of fees required the jury or court to determine: (1) Mr. Cimino wrongfully and intentionally exploited and harmed Mr. Indelicato (NRS 41.1395(4)(b)); and (2) Mr. Cimino acted with recklessness, oppression, fraud, or malice (NRS 41.1395(2)). These determinations necessarily require a conclusion that Mr. Cimino failed to provide any excuse for his conduct. Malice within the meaning of § 523(a)(6) is established.

As to willfulness, again the elder abuse statute requires an intentional exploitation through conversion of an elderly person's assets. Mr. Cimino had to know that conversion of an elderly person's assets would be injurious; he is charged with knowledge of the natural consequences of his actions. *Ormsby*, 591 F.3d at 1206. Thus, the finding of conversion coupled with application of the elder abuse multiplier and the award of attorneys' fees required a determination equivalent to willfulness under § 523(a)(6).

And once a § 523(a)(6) nondischargeability is established, all damages that flow from the underlying claims are non-dischargeable. Here that includes the attorneys' fees also recoverable under the Nevada elder abuse statute. *See Smart v. Baroff (In re Baroff)*, 105 F. 3d 439, 443 (9th Cir.

14

1997) (holding that attorneys' fees recoverable under state law are nondischargeable when the underlying claim is nondischargeable).

## CONCLUSION

Based on the foregoing, we AFFIRM.