FILED

JUN 03 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT


**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-14-1010-KiKuDa |
| ANA BEATRIZ BETANCOURT, | Bk. No.   1:10-bk-14588-GM |
| Debtor. | Adv. No.  1:12-ap-1221-GM |

| | |
|---|---|
| ANA BEATRIZ BETANCOURT, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| MATTHEW BALLMER, | |
| Appellee. | |

Argued and Submitted on September 18, 2014,
at Pasadena, California

Filed - June 3, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

Appearances:   Jeffrey D. Nadel argued for appellant, Ana Beatriz Betancourt; Derek L. Tabone of Law Offices of Tabone, APC argued for appellee, Matthew Ballmer.

Before:   KIRSCHER, KURTZ and DAVIS,[2] Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] Hon. Laurel E. Davis, Bankruptcy Judge for the District of Nevada, sitting by designation.

Debtor Ana Beatriz Betancourt appeals a judgment determining that she willfully and maliciously injured Paul Ballmer or his property under § 523(a)(6)[3] by transferring certain real property to prevent Paul Ballmer, and his assignee, appellee Matthew Ballmer from collecting on his prepetition judgment lien.

Because the bankruptcy court failed to make sufficient findings to support its ruling, we VACATE and REMAND.

## I.    FACTUAL AND PROCEDURAL HISTORY

## A.    Events leading to the state court litigation.

Paul Ballmer is a real estate broker and developer. Debtor became a licensed real estate agent in 1977. Debtor married Calvin Larson in 2012; they began dating in 1984. Debtor is the sole shareholder of La Fe, Inc. ("La Fe"). La Fe owned undeveloped lots in Topanga, California, generally described for purposes of this appeal as three parcels: 30-7; 30-10; and 027-029.[4]

Robert Rein is a real estate attorney and former neighbor of Debtor. He met Debtor when he or his company, Racada Corporation ("Racada"), purchased or attempted to purchase two lots: Parcels 30-7 and 30-10, from La Fe in 2002. Rein represented La Fe in the state court litigation initiated by Ballmer.

Debtor hired Ballmer to assist Debtor and La Fe in lot-line adjustments for La Fe's various parcels. Ballmer worked for La Fe

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] We recognize that more than one lot may be included in each identified parcel.

from 1996 to 2001.

When La Fe failed to pay Ballmer for his services, he sued La Fe in state court in 2003 for breach of contract. The state court held a final status conference on December 9, 2004, and commenced a trial on December 13, 2004. No one appeared for La Fe. Debtor failed to appear at the state court trial due to knee pain. Rein never explained why he did not appear.

Ballmer obtained a default judgment after prove-up. The state court entered a judgment against La Fe for $85,626.73 on January 28, 2005. La Fe did not appeal the judgment or move to set it aside. Ballmer recorded the abstract of the judgment on February 23, 2005. Ballmer believed the recorded abstract attached to the properties owned by La Fe. In 2007, Ballmer assigned the judgment to his son, Matthew,[5] the appellee in this case.

**B. Debtor's bankruptcy filing and the adversary proceeding.**

Debtor filed a chapter 7 bankruptcy case on April 20, 2010. Matthew initiated a nondischargeability complaint and alleged that on December 13, 2004, the day of the state court trial, La Fe owned certain parcels of undeveloped lots. However, between the trial date of December 13, 2004, and the entry of the judgment on January 28, 2005, Matthew alleged that Debtor and her allies engaged in a series of fraudulent transfers for the purpose of divesting La Fe of these parcels prior to the entry of judgment against La Fe. Matthew alleged that neither Ballmer nor he became aware of the transfers of the parcels until July 2011, when

---

[5] We refer to Ballmer's son as Matthew only because the men share the same surname. No disrespect is intended.

-3-

Matthew began collection efforts on the judgment. Matthew further alleged that: (1) Debtor actually intended "to hinder, delay and defraud the legitimate creditors of [La Fe];" (2) Debtor "is liable for the value of the fraudulently conveyed properties;" (3) Debtor's acts "were made with actual malice and intent to defraud thereby preventing Ballmer or his assigns from recovering for the considerable services he rendered [La Fe] and . . . Debtor" and justifying "punitive damages;" and (4) Debtor's obligation is not "dischargeable under [§ 523(a)(4)] as a fiduciary of [La Fe] with respect to its creditors" and "under [§ 523(a)(6)] as a willful and malicious injury in that debtor intended her actions in transferring La Fe's assets to wrongfully enrich herself at the expense of [Matthew's] predecessor." See Matthew's adversary complaint, p. 4. Matthew concurrently filed a fraudulent conveyance action against Debtor and Larson in state court, which may still be pending.

The bankruptcy court held a trial on the § 523(a)(6) claim on December 3, 2013. The transfers at issue in this case involve Parcels 30-7, 30-10, and 027-029. After hearing testimony from the witnesses and brief closing arguments from counsel, the bankruptcy court took the matter under submission.

**C.    The bankruptcy court's ruling.**

The bankruptcy court issued its Memorandum Opinion on December 20, 2013. Based on the identified exhibits, which are not part of the record on appeal, testimony submitted to the bankruptcy court during the trial and its Memorandum Opinion, we glean the following facts.

Larson, in the 1990s, tried to purchase Parcels 30-7 and

-4-

30-10 from a third-party seller through escrow. After considerable time, Larson instructed the escrow agent to transfer the lots from the third-party seller to La Fe, since La Fe could obtain the necessary purchase loans. Debtor did testify that Larson actually paid the purchase price and taxes associated with the two parcels. In 2002, La Fe transferred Parcel 30-7 to Rein. Parcel 30-7 was never returned to Larson, Debtor or La Fe.

In October 2002, La Fe transferred Parcel 30-10 to Racada by grant deed. The grant deed and a trust deed were recorded on December 20, 2004. Rein signed the trust deed in favor of Larson, the beneficiary, on December 13, 2004, on the same date as the state court trial. In 2007, Racada assigned the beneficiary's interest under the trust deed to Debtor although Larson was the beneficiary and Racada was the grantor. Debtor, stating she was the beneficiary, then substituted trustees. In 2008, a trustee's deed was recorded transferring Parcel 30-10 to Debtor for a credit bid price of $124,130.64. Debtor, in 2009, transferred Parcel 30-10 to Larson and Debtor. The bankruptcy court found that Rein and Racada never paid anything for Parcel 30-10 and that Rein served as a "straw man" for Debtor to transfer the parcel from La Fe.

For Parcel 027-029, Debtor testified that she created La Fe in 1983 to own this parcel and that Larson loaned money to La Fe for its purchase and payment of taxes. The bankruptcy court found that no documents explained: why it initially was transferred to Larson in 1998; why the grant deed was not recorded for six years; and how on December 14, 2004, Debtor had any interest to be transferred by her quitclaim deed to Larson. Also, no evidence was presented that Larson paid anything to La Fe or to Debtor for

-5-

this transfer. This lack of payment was supported by the fact that in May 2007 Larson transferred the property back to Debtor as a gift.

Thus, looking at the evidence as a whole, the bankruptcy court found that a group of deeds, originally created in the late 1990s and through 2002, were unrecorded and possibly undelivered. Then, suddenly, on December 20, 2004 - one week after the state court trial - they were recorded transferring all of La Fe's interest in Parcel 027-029 to Larson. The only remaining parcel, Parcel 30-10, was transferred to Racada and simultaneously a deed of trust was recorded on behalf of Racada, giving a lien to Larson on that parcel.

The bankruptcy court found that this "flurry" of activity in December 2004 demonstrated Debtor's intent to remove any ownership interest in real property from La Fe to prevent Ballmer from placing a judgment lien in his favor.

Based on the evidence, the bankruptcy court found that the two sets of parcels transferred in December 2004 had equity in them. Parcels 30-7 and 30-10 were originally purchased for $70,000 or $80,000. Parcel 30-7 was transferred to Rein for $200,000, and Parcel 30-10 showed a documentary transfer tax equivalent to $100,000 (which was never paid) at the time the grant deed from La Fe to Racada was recorded, which coincided with the deed of trust for that same amount. No evidence of any liens or encumbrances existed on Parcel 027-029 when it was transferred from La Fe to Larson by deed recorded in December 2004, and that deed showed a transfer tax valuing the property at $100,000. In addition, no evidence existed establishing Larson actually paid

that amount or any amount for Parcel 027-029.

Therefore, the bankruptcy court found that Debtor's transfer of valuable assets of La Fe without consideration to prevent Ballmer from collecting on his judgment was a willful injury. It also found that Debtor's actions constituted a malicious injury. Transferring property without adequate consideration in order to prevent a creditor from obtaining a judgment lien is a wrongful act. It was done intentionally, and Debtor's actions necessarily caused Matthew injury. Finally, Debtor had offered no just cause or excuse for her wrongful actions.

A judgment in favor of Matthew for $75,440.84 plus interest was entered on December 20, 2013.[6] Debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in determining that Debtor intended through her actions to inflict a willful and malicious injury to Ballmer or to his property, which is nondischargeable under § 523(a)(6)?

## IV. STANDARDS OF REVIEW

In reviewing a bankruptcy court's nondischargeability determination, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). However, the ultimate question of whether a particular debt is

---

[6] The § 523(a)(4) claim was withdrawn at the time of trial. See Judgment, Dkt. No. 35, Dec. 20, 2015.

-7-

dischargeable is a mixed question of fact and law we review de novo. See Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011).

The issue of a debtor's intent is a question of fact reviewed under the clearly erroneous standard. Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000), overruled on other grounds by Law v. Siegal, 134 S.Ct. 1188 (2014). Factual findings are clearly erroneous if illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-75 (1985).

### V.  DISCUSSION

**A.  Preliminary issue.**

The Debtor, as appellant, has the responsibility to provide an adequate record on appeal. Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995). She also bears the burden of demonstrating that the bankruptcy court's factual findings are clearly erroneous. Id. "Appellants should know that an attempt to reverse the [bankruptcy] court's findings of fact will require the entire record relied upon by the [bankruptcy] court be supplied for review." Id. (internal quotations and citation omitted) (emphasis added).

Matthew contends we should summarily affirm the bankruptcy court's decision because Debtor failed to include any of the trial exhibits in her record on appeal, which were not electronically filed.

-8-

However, it is also important to consider the reciprocal role of the appellee when it comes to the ultimate sufficiency of the record. This Panel has cautioned that the "appellee stands on tenuous footing when arguing that a record is too incomplete to permit appellate review because while the assembly of the record is appellant's duty, appellate rules allow appellees to participate in the designation of portions of transcripts and other parts of the record." Kyle v. Dye (In re Kyle), 317 B.R. 390, 394 (9th Cir. BAP 2004), aff'd, 170 F. App'x 457 (9th Cir. 2006) (citing Rule 8006;[7] Fed. R. App. P. 6(b)(2)(B)(ii) & 10(b)(3)(B)). Likewise, an appellee is authorized to file excerpts of record in an appendix "which contains material required to be included by the appellant but omitted by appellant." Id. (citing Rule 8009(b)[8]).

Nevertheless, we have discretion to dismiss an appeal or summarily affirm a bankruptcy court's ruling if the appellant does not provide a sufficient record to enable us to conduct an informed review. Id. at 393. However, before exercising such discretion we first should consider whether we can conduct an informed review with the record provided. Id. In this regard, a distinction must be drawn between a record that is so incomplete that it does not permit the Panel to obtain an understanding of the issues, and an incomplete record that does contain enough to enable review. Id. If the record is impossibly incomplete, there

---

[7] Rule 8006 was amended, effective December 1, 2014, and in this context became Rule 8009(a)(2).

[8] Rule 8009(b) was amended, effective December 1, 2014, and in this context became Rule 8018(b)(2).

is "little choice" but to affirm or dismiss. Id. at 394 (citing Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1191 (9th Cir. 2003). If the record is merely incomplete, the Panel is left with the possibility that enough of the record might nevertheless be present so as to enable review. Id.

While the inclusion of the exhibits in the record would have aided our review, their omission does not render the record impossibly incomplete. Significantly the resolution of the appeal turns on material factual determinations that are missing from the bankruptcy court's analysis. The record does contain a copy of the trial transcript, which was sufficient for our review. Thus, the record appears to contain enough to obtain an understanding of the issues to enable review. As such, we will not exercise our discretion to summarily affirm the bankruptcy court's ruling. Thus, we turn now to the merits of Debtor's appeal.

**B.** **The bankruptcy court did not make findings sufficient to support its determination that Debtor's actions inflicted a willful and malicious injury that would be nondischargeable under § 523(a)(6).**

**1. Governing law.**

As a general rule, the Bankruptcy Code is "designed to give a debtor a fresh start by discharging as many of its debts as possible." Cal. Dept. of Health Servs. v. Jensen (In re Jensen), 995 F.2d 925, 928 (9th Cir. 1993) (internal quotations and citations omitted). This process begins when a bankruptcy petition is filed and an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). The debtor's objective is to be personally discharged from the obligations against the

-10-

property of this estate. § 727. Such a discharge relieves "the debtor from all debts that arose before the date of the order for relief[.]" § 727(b).

Section 523(a) enumerates exceptions to the general rule of discharge by providing that a bankruptcy court must not discharge an individual from certain kinds of obligations. Quarre v. Saylor (In re Saylor), 108 F.3d 219, 220 (9th Cir. 1997)("Saylor II")[9] (citing Papadakis v. Zelis (In re Zelis), 66 F.3d 205, 208 (9th Cir. 1995)). A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in § 523(a). Grogan v. Garner, 498 U.S. 279, 291 (1991). If the creditor carries its burden and the bankruptcy court declares a debt nondischargeable under § 523(a), the debtor continues to bear part of the financial burden that drove the debtor to file bankruptcy in the first place; thus, § 523(a) "stands in tension" with the fundamental bankruptcy goal of providing debtors with a "fresh start." Willms v. Sanderson (In re Sanderson), 723 F.3d 1094, 1099-1100 (9th Cir. 2013). For this reason, § 523(a) is narrowly construed against the objecting creditor and in favor of the debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992) ("In order to effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor

---

[9] In Saylor II, the Ninth Circuit affirmed this panel's decision by the same name found at 178 B.R. 209 (9th Cir. BAP 1995). We discuss both the Circuit and BAP decisions in this memorandum. For clarity, we refer to the BAP decision as "Saylor I" and the Ninth Circuit decision as "Saylor II."

-11-

of the debtor.").

The issue in this appeal involves § 523(a)(6), which excepts from discharge, debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6).

Therefore, to hold that an exception to discharge under § 523(a)(6) arose from the property transfers at issue in this appeal, the bankruptcy court must find by a preponderance of the evidence: that Debtor subjectively intended a willful and malicious injury to the creditor or the property of the creditor by transferring the property; and that such willful and malicious injury gave rise to the type of debt excepted from discharge under § 523(a)(6).

### a. Willful and malicious conduct.

Both willfulness and maliciousness must be proven in order to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). At a minimum, willful requires "a deliberate act with knowledge that the act is substantially certain to cause injury." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). In other words, a debtor's act is "willful" only if he or she actually intended to cause injury or actually believed that injury was substantially certain to occur. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002).

-12-

Proving a "malicious" injury requires a showing that the debtor (1) committed a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) was done without just cause or excuse. Id. at 1146-47.

Debtor contends the facts and applicable law do not support the bankruptcy court's findings that Debtor transferred property with the intent to inflict injury to Ballmer. Specifically, Debtor contends she transferred the properties to Larson not as a means to intentionally cause injury to Ballmer, but to pay Larson for La Fe's debt owed to him based on his investment and financial contributions to La Fe.

The bankruptcy court, after considering the several transfers involving Parcels 30-10 and 027-029, found that the facts "demonstrate[d] the intent to remove any ownership interest in real property from La Fe so as to prevent Ballmer from placing a judgment lien in his favor." Mem. Op. at 7. Further, the court stated: "Because valuable assets of La Fe were transferred without consideration so as to prevent Ballmer from collecting on his judgment, this was a willful injury. It was also a malicious injury. Transferring the property without adequate consideration in order to prevent a creditor from obtaining a judgment lien is a wrongful act. This was done intentionally and such an act necessarily caused injury. And no just cause existed that would excuse this wrongful action." Mem. Op. at 9.

The bankruptcy court does not make findings as to the Debtor's state of mind. In reviewing the bankruptcy court's memorandum opinion, we are unable to determine whether it applied a subjective or an objective standard in finding a willful injury.

-13-

As Su teaches, a subjective standard must be applied. We vacate and remand so the bankruptcy court may conduct further proceedings in considering whether it applied a subjective standard in determining willful injury.

We must also vacate and remand for another reason. The bankruptcy court needs to make findings of a proper debt resulting from injury to Ballmer or the property of Ballmer.

### b. Debt resulting from injury to person or property.

Before there can be a nondischargeable debt under § 523(a)(6) a finding must be made that the Debtor's willful and malicious conduct actually constituted "injury . . . to another entity or the property of another entity."[10]  See § 523(a)(6).

### i. Injury to person.

Nothing in the record indicates that the court made a finding that Debtor's conduct actually caused a willful and malicious injury to Ballmer sufficient to bring Matthew's claim within the first predicate of § 523(a)(6) as "willful and malicious injury . . . to another entity."

In order to say that an act caused injury to the creditor himself within the meaning of § 523(a)(6), the act must be such that it gives rise to a legally cognizable claim which could result in a monetary judgment. See Quarre v. Saylor (In re Saylor), 178 B.R. 209, 213 (9th Cir. BAP 1995) ("Saylor I").[11]  Otherwise, no debt arises as a result of the

---

[10] The term "entity," is broadly defined to include a "person, trust, [or] estate."  § 101(15).

[11] We are mindful that both Saylor I and Saylor II were
(continued...)

-14-

injury and, if no debt arises as a result of a willful and malicious injury, § 523(a)(6) does not come into play.

Here, the bankruptcy court found that Debtor's willful and malicious conduct in transferring the property out of La Fe injured Ballmer because it prevented him from collecting on his eventual judgment. However, it does not automatically follow that this constitutes an injury to Ballmer within the scope of § 523(a)(6).

For instance, typically when a debtor attempts to hinder, delay or defraud a creditor by transferring property, a claim for fraudulent transfer is the basis in law for holding the debtor liable to the creditor for such injury. However, this would not give rise to a nondischargeable injury under § 523(a)(6) because, under California law, a creditor's remedies for fraudulent transfer are generally non-monetary in nature.[12] See Saylor I, 178 B.R. at 213-214. In this case, the bankruptcy court expressly excluded fraudulent transfer as the legal basis for Matthew's right to payment stating "the issue of whether [the lot transfers] meets the legal definition of a fraudulent transfer is not before

---

[11](...continued) decided prior to the Supreme Court deciding Geiger. Consequently the emphasis now is on the injury and not the act.

[12] "[U]nder California law, a creditor's remedies for fraudulent transfer are avoidance of the transfer to the extent necessary to satisfy the creditor's claim, attachment of the asset transferred, and equitable (injunction against further transfer of the asset transferred, or appointment of a receiver). Where . . . the creditor has a judgment against the transferor, he may also execute against the asset transferred or its proceeds. How these remedies raise a right to payment **from the transferors**, here the debtors, is not clear." Saylor I, 178 B.R. at 213-214 (emphasis in original).

-15-

the bankruptcy court." Mem. Op. at 8, n.10. Yet, the court made no further findings as to the legal theory, statutory or otherwise, under which Matthew has a right to payment from Debtor.

Accordingly, if the bankruptcy court is to support its § 523(a)(6) ruling in favor of Matthew on the basis that there has been an "injury . . . to another entity[,]" the court must make a finding that Debtor's transfers of property inflicted a willful and malicious injury that could give rise to a legal right to payment from Debtor.

### ii. Injury to property.

In order to bring Matthew's claim within the second predicate of § 523(a)(6) as "willful and malicious injury . . . to . . . property," Ballmer must have held an interest in property capable of being willfully and maliciously injured by Debtor's transfers. See Saylor I, 178 B. R. at 214 ("Nondischargeability is meaningful only in connection with obligations which are or may be monetary"). In other words, unless Ballmer had a property interest associated with the parcels at issue, then Debtor's transfer of the parcels could not have caused willful and malicious injury to the "property" of Ballmer within the meaning of § 523(a)(6).

The Ninth Circuit has addressed whether a debtor's misconduct constituted a willful and malicious injury to property for purposes of § 523(a)(6) in a context with facts strikingly similar to the case at bar. In the Saylor case, the creditor brought a breach of contract claim against the debtors and, while the action was pending, the debtors transferred three parcels of real property to a third party for insufficient consideration.

-16-

Saylor II, 108 F.3d at 219. After the transfers were made, the trial court in the breach of contract action entered a judgment in creditor's favor. Id. Seeking to satisfy the breach of contract judgment, the creditor filed a fraudulent conveyance action. Id. However, the debtors then filed for chapter 7 bankruptcy; creditor subsequently filed an adversary proceeding to determine the dischargeability of the debtors' debt under § 523(a)(6). Id.

Despite creditor's contention that debtors' fraudulent transfers gave rise to a nondischargeable debt under § 523(a)(6), the Ninth Circuit affirmed the BAP's decision in favor of the debtors. Specifically, the Court held that the creditor did not have "property" that was injured because his "claim had not been reduced to judgment at the time the three parcels of real estate were transferred, and he had no security interest in the property represented thereby." Id. at 221. Thus, a mere interest in fraudulent transfer remedies without something more was insufficient to qualify as an interest in property for purposes of § 523(a)(6). Id.

Similarly, in Riso, the Ninth Circuit affirmed the BAP's decision that a right of first refusal was not a "property" interest under § 523(a)(6). 978 F.2d at 1154. Therefore, the debtor's willful transfer of certain real property in violation of the creditor's interest in the right of first refusal did not constitute the sort of injury to creditor's property contemplated by § 523(a)(6). Id.

In this case, nothing in the record indicates that the bankruptcy court made any findings as to whether Debtor's property transfers to keep La Fe's assets out of the hands of Ballmer

-17-

constituted a willful and malicious injury to the property of Ballmer. The property transfers at issue that divested La Fe of valuable assets so as to prevent Ballmer from executing on a judgment in his favor were completed by December 20, 2004.[13] These transfers were after Debtor failed to appear for trial in the underlying breach of contract matter, but over one month before the judgment was entered in Ballmer's favor and over two months before an abstract of the judgment was recorded.

Thus, similar to the Saylor cases, the transfers were made before Ballmer's claim was reduced to judgment. Ballmer had no lien against the parcels at issue at the time the transfers were made. The facts only reveal that at the time Debtor transferred the property out of La Fe, depleting the assets available to satisfy a potential adverse judgment, Ballmer was merely an unsecured creditor holding only an interest in the possibility of obtaining a judgment and placing a judgment lien in his favor sometime in the future.

Based on the limited record before us, we are unable to ascertain what theory the bankruptcy court may have relied on to reach a result different than the Saylor cases and Riso. Indeed, under Ninth Circuit precedent, if transfers in violation of a

---

[13] Although the record refers to certain property transfers that occurred in 2007 (i.e. post-judgment), these transfers would be immaterial to a determination of whether the Debtor's property transfers willfully and maliciously injured Ballmer because the 2007 transfers did not deplete La Fe of assets which otherwise would have been available to Ballmer to place a judgment lien in his favor. That scheme was accomplished by December 20, 2004 when Debtor transferred the subject property out of La Fe. (ER 144, 149-150). Rather the 2007 transfers were between Larson and Debtor individually, long after La Fe was stripped of its ownership interest in them.

potential state court judgment, a right to fraudulent transfer remedies, or a right of first refusal are insufficient grounds for a § 523(a)(6) injury to property, then certainly a transfer in violation of the future right to file a judgment lien against the parcels at issue here would not be a property right protected by § 523(a)(6).

Therefore, if the bankruptcy court is to support its § 523(a)(6) ruling in favor of Matthew on the basis that there has been an injury to property, the court must make a finding that Ballmer had an established property interest that Debtor's property transfers willfully and maliciously injured.

### iii. Resulting debt.

In the event the bankruptcy court finds, on remand, that Debtor's conduct willfully and maliciously injured either the creditor or the property of the creditor, the court must also determine whether a proper § 523(a)(6) debt resulted.

The Bankruptcy Code defines "debt" as "liability on a claim." § 101(12). A "claim" is broadly defined as "a right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." § 101(5)(A)-(B).

For purposes of nondischargeability under § 523(a)(6) the "debt" at issue must arise from the intentional conduct that willfully and maliciously injures a person or the property of that person; therefore, the general rule in the Ninth Circuit is that § 523(a)(6) applies to recoveries based on a tort claim rather than those based on breach of contract. See In re Riso, 978 F.2d at 1154 ("It is well settled that a simple breach of contract is

-19-

not the type of injury addressed by § 523(a)(6)"); Barbachano v. Allen, 192 F.2d 836, 838 (9th Cir. 1951); Commc'n Workers of Am. Local No. 11500, AFL-CIO v. Akridge (In re Akridge), 71 B.R. 151, 154 (Bankr. S.D. Cal. 1987) (debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities, not debts stemming from breach of contract); Stout v. Marshack (In re Stout), 2014 WL 1724506 (9th Cir. BAP May 1, 2014) ("Section 523(a)(6) essentially encompasses intentional torts").

In narrow circumstances a breach of contract claim may be nondischargeable under § 523(a)(6) if the breach is both in bad faith and "accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" In re Jercich, 238 F.3d at 1206. Whether a debtor's breach of contract is tortious is determined under state law. Id.

In California, tortious breach of contract requires: "[c]onduct amounting to a breach of contract [that] . . . also violates an independent duty arising from principals of tort law." Id.; see also Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008)(conduct is "tortious if it constitutes a tort under state law"). California law further limits recovery for tortious breach of contract to situations where: "in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state." In re Jercich, 238 F.3d at 1206 (internal quotation marks omitted) (alteration in original).

In this appeal, the bankruptcy court's findings are insufficient for the Panel to determine whether the debt at issue is a nondischargeable debt under § 523(a)(6). The limited record

-20-

before us does not reveal whether Matthew's premise in seeking the nondischargeability protection of § 523(a)(6) is that Debtor's property transfers created a new/independent debt or whether the transfers transmuted the otherwise dischargeable breach of contract debt into a nondischargeable debt arising from willful and malicious injury.

This ambiguity leaves us unable to reconcile conflicting aspects of the record and the court's memorandum opinion to ascertain whether the debt ultimately reflected in the court's judgment is the uncollected breach of contract damages or independent damages. For instance, the only pre-petition "debt" explicitly stated in the record is the $85,626.75 judgment debt from the underlying breach of contract claim. Yet, in Matthew's complaint he asks that "the court **determine the debt** of debtor to Claimant and find that said debt is not dischargeable under section . . . 523(a)(6)," which suggests that the "debt" Matthew is seeking to except from discharge is a debt distinct from the already determined judgment debt. See Matthew's adversary complaint 5:1-5 (emphasis added).

Similarly confusing in this regard is the bankruptcy court's memorandum opinion. The court begins by pointing to the fact that Ballmer received a judgment in the underlying breach of contract action in the amount of $85,626.75, and that Matthew "filed this adversary proceeding seeking to have **the judgment** declared non-dischargeable under . . . 523(a)(6)." Mem. Op. 138:18-139:1 (emphasis added). Thus, the court seems to frame the context of this adversary proceeding as dealing with the nondischargeability of the breach of contract judgment as the debt at issue. However,

-21-

the court then enters a judgment in favor of Matthew in the amount of $75,440.84, an amount that does not correspond to the uncollected breach of contract debt, but also is not explained as an independent measure of damages by any of the court's findings.[14]

The record is unclear as to whether the debt the bankruptcy court has deemed nondischargeable indeed resulted from the Debtor's conduct inflicting willful and malicious injury as a separate debt or whether it is some sort of recalculation of the outstanding judgment debt that arose from the underlying breach of contract claim. In any event, the court must properly identify the character of the debt at issue to support its $75,440.84 judgment as a nondischargeable debt under § 523(a)(6).

Under these circumstances, we conclude that further findings are required before a proper determination of nondischargeability under § 523(a)(6) can be made. The bankruptcy court needs: to determine Debtor's state of mind given the appropriate standard of intent; to determine whether Debtor's conduct inflicted willful and malicious injury on Ballmer or his property; and to determine whether such willful and malicious injury gave rise to a nondischargeable debt.

## VI. CONCLUSION

For the reasons set forth above, we VACATE and REMAND for the bankruptcy court to conduct further proceedings consistent with this memorandum.

---

[14] At oral argument Matthew's counsel was asked how the bankruptcy court arrived at the $75,440.84 figure but he did not know where it came from or what measure of damages it represented.