# FILED

AUG 9 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1019-SKuTa |
| KAMAL ZEEB, | Bk. No.  8:13-bk-14883-CB |
| Debtor. | Adv. No. 8:13-ap-01301-CB |
| KAMAL ZEEB, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| SAMUEL FARAH, | |
| Appellee. | |

Argued and Submitted on July 18, 2019
at Pasadena, California

Filed – August 9, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

1

Honorable  Catherine E. Bauer, Bankruptcy Judge, Presiding

———

Appearances:      Andrew Edward Smyth argued for appellant; Jeffrey Valentine Weber of Briggs and Alexander, APC argued for appellee.

———

Before: SPRAKER, KURTZ, and TAYLOR, Bankruptcy Judges.

**INTRODUCTION**

This is the third time we have considered an appeal arising from the above-referenced adversary proceeding. We dismissed chapter 7[1] debtor Kamal Zeeb's first appeal as interlocutory because the summary judgment on appeal only addressed and disposed of creditor Samuel Farah's § 523(a)(6) claim ("*Zeeb I*"). After our dismissal, the parties stipulated to dismiss all other claims for relief set forth in Farah's complaint. In Zeeb's second appeal, we vacated the summary judgment in an unpublished memorandum decision. *Zeeb v. Farah (In re Zeeb)*, BAP No. CC–15–1012–FKiKu, 2015 WL 6720934 (9th Cir. BAP Nov. 3, 2015) ("*Zeeb II*"). We held in *Zeeb II* that Farah's state court judgment did not establish the willfulness and maliciousness required for non-dischargeability under

———

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

§ 523(a)(6).

Zeeb now appeals the bankruptcy court's judgment after trial excepting the debt he owes to Farah from discharge under § 523(a)(6). The two arguments Zeeb raises on appeal have no merit. Zeeb first argues that the state court jury's award of zero damages on the conversion cause of action conclusively established that Farah suffered no damages from the tortious conduct. We disagree. Though the jury awarded Farah no damages on his conversion claims, it also found that he had proven all the elements of conversion, including harm. Moreover, the state court ultimately entered judgment for Farah on his conversion claims. Given the conflict between the award of no damages on the one hand, and the finding of harm and entry of judgment on the conversion claims on the other, issue preclusion did not prevent the bankruptcy court from determining damages in the nondischargeability action.

Zeeb's second argument concerns the sufficiency of the evidence before the bankruptcy court. He contends that the evidence was insufficient to support a finding that he willfully injured Farah within the meaning of § 523(a)(6). Again, we disagree. The trial record, when combined with the state court jury's findings regarding Zeeb's conduct in misappropriating inventory and cash from Farah's company, was sufficient to support the bankruptcy court's inferences regarding willfulness.

Accordingly, we AFFIRM.

**FACTS**

Farah and Zeeb worked together in two businesses: Storm Distribution, Inc. ("Storm Distribution") and JSSA Enterprises, Inc. ("JSSA"). Both businesses concerned the importation and sale of hookahs and related accessories. Farah managed the sales and accounts, while Zeeb managed the facilities and employees. Farah claimed Storm Distribution as his wholly owned business. JSSA was a partnership between Farah, Zeeb, and Ahmed Shamekh.

When Farah traveled abroad for a vacation in September 2010, he left Zeeb in charge of all aspects of Storm Distribution. According to Farah, while he was traveling Zeeb misappropriated the inventory and cash of both Storm Distribution and JSSA. Farah sued Zeeb and others in the Superior Court for Orange County, California. Farah's first amended complaint stated thirteen causes of action, but only four of the causes of action are relevant to this appeal. Farah stated two causes of action for conversion – one pertaining to Storm Distribution and the other to JSSA – and two corresponding causes of action for breach of contract. All four of these causes of action relied on the allegations that Zeeb misappropriated the assets of Storm Distribution and JSSA as the grounds for relief.

In May 2013, the state court held a jury trial on Farah's first amended complaint. The jury rendered a special verdict that found, in relevant part, that Farah and Zeeb entered into a contract pursuant to which Zeeb agreed

4

to oversee Storm Distribution. The jury also found that Zeeb breached that contract, which caused Farah to suffer $330,514.25 in damages. As for the conversion cause of action pertaining to Storm Distribution, the jury found that:

1.  Farah had a right to possess Storm Distribution's inventory and funds.

2.  Zeeb intentionally and substantially interfered with Farah's property by taking possession of Storm Distribution's inventory and funds.

3.  Farah did not consent to Zeeb's taking possession.

4.  Farah was harmed thereby.

5.  Zeeb's conduct was a substantial factor in causing Farah's harm.

6.  As a result of that harm, Farah suffered $0 in damages.

7   Zeeb engaged in the conduct with malice, oppression or fraud.

8.  Farah was entitled to a punitive damages award of $50,000.

The jury's breach of contract and conversion findings pertaining to JSSA were substantially similar to the above-referenced findings, except that the jury awarded $101,091.45 in compensatory damages for the breach of contract pertaining to JSSA.

Zeeb filed his chapter 7 case in June 2013. In August 2013, the bankruptcy court granted Farah relief from stay to enter judgment in the state court action. Notwithstanding the jury verdict awarding punitive damages, the state court entered a minute order striking the jury's punitive

5

damages awards. The state court reasoned, in part, that the jury had not awarded Farah any tort damages. As the state court explained:

> The Special Verdict and the evidence do not support an award for punitive damages. CC 3294(a) provides for punitive damages "In an action for the breach of an obligation not arising from contract." Plaintiff's success on the breach of contract action does not support punitive damages. Plaintiff must prove compensatory tort damages to support [punitive] damages. Additionally, Plaintiff did not introduce evidence of defendant's financial condition. *See Simon v. San Paolo U.S. Holding Co., Inc.* (2009) 35 Cal. 4th 1159, 1185. Without this evidence the jury cannot calculate a proper award of punitive damages.

*Zeeb II*, 2015 WL 6720934, at *2 (quoting Minute Order, Orange Cnty. Sup. Ct. Case No. 30-2011-00529564-CU-NP-CJC (Sept. 9, 2013)).

Because the jury verdict did not award Farah any compensatory tort damages, the state court's original judgment entered in September 2013 provided that judgment was not awarded on the conversion causes of action. The state court originally entered judgment against Farah and in favor of Zeeb on the conversion claims.

On September 16, 2013, Farah commenced his adversary proceeding seeking, among other things, to except the judgment debts from discharge under § 523(a)(6). Farah also filed a motion in the state court to amend the underlying judgment to recognize that he had prevailed on the conversion claims. The state court agreed with Farah. In February 2014, the state court

6

entered a minute order granting Farah's motion to amend the judgment. The state court held that Farah was the "prevailing party" on both conversion causes of action even though the jury verdict and the judgment awarded him $0 in damages on those causes of action.

The state court entered its amended judgment in February 2014. The amended judgment provided in relevant part as follows:

1. On the cause of action for breach of contract regarding Storm Distribution by Samuel Farah against Kamal Zeeb judgment is awarded in favor of Samuel Farah against Kamal Zeeb in the amount of $330,514.24[.]

* * *

3. On the cause of action for conversion regarding Storm Distribution by Samuel Farah against Kamal Zeeb, including a prayer for punitive damages, judgment is awarded in favor of Samuel Farah against Kamal Zeeb in the amount of $0.00 in compensatory damages and $0.00 in punitive damages.

4. On the cause of action for breach of contract regarding JSSA Enterprises, Inc. by Samuel Farah against Kamal Zeeb and against Zeeb Brothers, Inc. judgment is awarded in favor of Samuel Farah jointly and severally against Kamal Zeeb and against Zeeb Brothers, Inc. in the amount of $101,091.45[.]

* * *

6. On the cause of action for conversion regarding JSSA Enterprises, Inc. by Samuel Farah against Kamal Zeeb and against Zeeb Brothers, Inc., including a prayer for punitive

7

damages, judgment is awarded in favor of Samuel Farah jointly and severally against Kamal Zeeb and against Zeeb Brothers, Inc. in the amount of $0.00 in compensatory damages and $0.00 in punitive damages.

7. Pursuant to the election of remedies, Samuel Farah has elected to take the remedies awarded under breach of contract. The aggregate judgment award to Samuel Farah, therefore, is $431.605.69, of which the entire amount is enforceable against Kamal Zeeb and of which $10l,091.45 is enforceable against Zeeb Brothers, Inc.

In May 2014, Farah moved for summary judgment in the nondischargeability action. He argued that the state court judgment conclusively established that Zeeb had willfully and maliciously injured him within the meaning of § 523(a)(6). The bankruptcy court agreed with Farah and entered summary judgment on his § 523(a)(6) claim for relief. On appeal, however, we vacated the summary judgment in favor of Farah. We held that, as a matter of settled Ninth Circuit law, the preclusive effect of the state court's conversion judgment did not establish the requisite mental state for finding a willful injury under § 523(a)(6). We also held that the conversion judgment did not establish three of the four elements necessary to establish a malicious injury. As for the effect of the award of $0 in conversion damages, we stated:

Mr. Zeeb argues that the jury's award of zero dollars necessarily means that the jury did not find for Mr. Farah on the conversion claims. The fact that the judgment is for zero

8

dollars on the conversion claims raises the question of whether there is in fact a "debt" that could be nondischargeable. However, the bankruptcy court did not address this question, and the parties only tangentially raised this issue in their briefs. We make no determination on this question and will leave it for the bankruptcy court to consider on remand.

*Zeeb II*, 2015 WL 6720934, at *5  n.5

On remand, the bankruptcy court held a one-day bench trial.[2] The court took direct testimony by declaration. Farah's testimony was consistent with the allegations he made in his state court complaint. Farah testified that, in September 2010, he was the sole owner of Storm Distribution, which sold hookahs and hookah-related accessories. According to Farah, Storm Distribution stored its inventory in a warehouse in Anaheim, California. Farah further testified that Zeeb worked for him as a manager of Storm Distribution. When Farah took his overseas vacation in September 2010, he left Zeeb in charge of all aspects of this business. However, Farah maintained, soon after he left the country, Zeeb removed all of the inventory from the Storm Distribution warehouse and removed all of the cash from Storm Distribution's bank accounts. Farah also maintained that Zeeb removed these items and used them for his own purposes, rather than for Storm Distribution's business, without Farah's knowledge or consent. Farah concluded that, as a result of his loss of Storm

---

[2] After our remand, Farah filed a second summary judgment motion, which the bankruptcy court denied. The denial of that motion is beyond the scope of this appeal.

9

Distribution's inventory and cash, he was forced to close this business down.

As for JSSA, Farah testified that he invested $101,091.45 in JSSA consisting of cash and inventory. According to Farah, during his September 2010 vacation, Zeeb wrongfully took all of JSSA's inventory and other assets and used them for his own purposes rather than for JSSA's business. Farah maintained that, as a result of Zeeb's actions, he lost the full value of his $101,091.45 investment.

The court also heard the testimony of Fasi Ali Khan, who worked in Storm Distribution's warehouse in 2010. He testified that, while Farah was out of the country in September 2010, Zeeb was left in charge of Storm Distribution. According to Khan, shortly after Farah left the country, Zeeb contacted Khan and asked him to help move all of the inventory in the Storm Distribution warehouse to a location in downtown Los Angeles. In accordance with Zeeb's request, Khan stated that he helped move the inventory, which he only later learned was moved without Farah's knowledge or consent. Around the same time, Khan started receiving calls on the warehouse telephone from bill collectors indicating that Storm Distribution's bills were not being paid, including its rent payments for the warehouse. According to Khan, when he asked Zeeb about the unpaid bills and the rent payments, Zeeb told him it was not Zeeb's problem and he did not care because the warehouse was not in his name.

10

Zeeb's testimony told a different story. Zeeb claimed that he and Farah were business partners in Storm Distribution and that it was agreed between them that Storm Distribution's inventory could be "marketed" from whatever outlet they chose. He further claimed that all transfers and transactions he made were in furtherance of his partnership agreement. But he never specifically said that Farah agreed that all of Storm Distribution's inventory should be moved prior to sale or stored somewhere else.

After trial, the bankruptcy court issued a statement of decision. The court held that Farah was entitled to a judgment excepting Zeeb's debt from discharge under § 523(a)(6). In support of that holding, the court recognized the state court's amended judgment and then found that Zeeb's conduct was both willful and malicious within the meaning of § 523(a)(6). The bankruptcy court more specifically found with respect to Storm Distribution that, in late 2010, while Farah was out of the country, he left Zeeb in charge. According to the court, without Farah's knowledge, Zeeb moved substantially all of Storm Distribution's inventory to various stores in downtown Los Angeles. And he wrote checks on Storm Distribution's bank account to himself or to cash. Based on these facts, the court determined that "Debtor had to know and believe that what he had done was substantially certain to cause Farah to lose his businesses and his Money." Statement of Decision after Trial (Dec. 21, 2018) at 6:4-5.

During trial, Zeeb argued that the state court award of zero damages on Farah's conversion causes of action precluded the bankruptcy court from excepting the debt from discharge under § 523(a)(6). The bankruptcy court rejected this argument. In its recitation of facts, the court emphasized that Farah had elected to recover on his contract claim. The bankruptcy court then explained:

> Debtor's counsel makes much of the fact that the Amended Judgment had awards of $0 on the causes of action for conversion. He claims that the lack of money awards on the conversion causes of action means this Court cannot find in favor of Farah in this action. This argument has no merit. The Amended Judgement [sic] did rule in favor of Farah on the conversion causes of action on the merits. The fact that Farah **chose** to receive the damage awards under breach of contract was merely for the sake of avoiding duplicative awards of damages. Farah could have elected damages pursuant to the conversion causes of action.

Statement of Decision after Trial (Dec. 21, 2018) at 6:11-14. (Emphasis in original).

On January 24, 2019, the bankruptcy court entered judgment excepting from discharge under § 523(a)(6) the state court judgment debt in the amount of $431,605.69. Zeeb timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

12

## ISSUES

1.      Did issue preclusion bar the bankruptcy court from determining that Zeeb's debt arose from tortious conduct?

2.      Was there sufficient evidence to support the bankruptcy court's finding that Zeeb willfully injured Farah?

## STANDARDS OF REVIEW

"Because the bankruptcy court entered its judgment after trial, we review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo." *Thiara v. Spycher Brothers (In re Thiara)*, 285 B.R. 420, 426-427 (9th Cir. BAP 2002) (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)). The bankruptcy court's factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 & n.21 (9th Cir. 2009) (en banc).

We also review de novo the bankruptcy court's determination as to whether the threshold elements for the application of issue preclusion have been satisfied. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). When we engage in de novo review, we consider the matter anew, as if the bankruptcy court did not address it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

When issue preclusion is available, we review the bankruptcy court's decision whether to apply it for an abuse of discretion. *In re Plyam*, 530 B.R.

13

at 461. The bankruptcy court abuses its discretion when it applies the wrong rule of law, misapplies the correct rule of law, or if its factual findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir.2011) (citing *Hinkson*, 585 F.3d at 1262).

## DISCUSSION

In *Zeeb II*, we set forth at length the legal principles governing nondischargeability under § 523(a)(6) and the doctrine of issue preclusion. We reiterate a number of these principles here to emphasize their importance to our decision.

### A.    Nondischargeability Under § 523(a)(6).

Generally speaking, § 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to the creditor or the creditor's property. *In re Plyam*, 530 B.R. at 463. A debtor's conduct is willful if he or she had a subjective intent to harm or subjectively believed that harm was substantially certain to occur as a result of his or her conduct. *In re Su*, 290 at 1144–45. As for maliciousness: "a 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Id.* at 1146–47 (citations omitted). Though the requirements for proving a willful and malicious injury are simple enough, application of the statute is not always so straightforward.

14

For instance, to properly apply § 523(a)(6) to a debt, the injury from which the debt arises not only must be willful and malicious but also tortious. *Lockerby v. Sierra*, 535 F.3d 1038, 1040–41 (9th Cir. 2008) (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001)). More specifically, a debt arising from a breach of contract can qualify as nondischargeable only under certain circumstances. *Lockerby*, 535 F.3d at 1040–41. The breach of contract must be "accompanied by malicious and willful tortious conduct." *Id.* at 1040 (citing *In re Jercich*, 238 F.3d at 1205) [emphasis omitted]. A debtor's conduct is intentionally tortious if that conduct would constitute an intentional tort under state law. *Id.* at 1041-42.

There are at least two relevant ways a creditor may take a judgment consisting of damages for breach of contract and prove that it is nondischargeable under § 523(a)(6). The first would be to establish that the breach of contract also constituted a tort such as conversion that the debtor undertook willfully and maliciously within the meaning of § 523(a)(6). *See In re Thiara*, 285 B.R. 430-32 (citing *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999)). In California, "[t]he elements of a conversion are the [creditor's] ownership or right to possession of the property at the time of the conversion; the [debtor's] conversion by a wrongful act or disposition of property rights; and damages." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997). As we explained in *Zeeb II*, damages from conversion in California need not be from a willful or malicious injury, so a

15

creditor seeking to except a debt from discharge under § 523(a)(6) must also prove that the conversion was undertaken willfully and maliciously. *Zeeb II*, 2015 WL 6720934 at *5-6.

Alternatively, the creditor could prove a "tortious breach of contract." But to do so, the creditor would need to show not only tortious conduct, but also that the debtor's conduct violated "a **fundamental public policy** of the state." *Coastal Indus. Partners, LLC v. Lawson (In re Lawson)*, BAP No. NC–14–1153–TaPaJu, 2015 WL 1291366, at *4 (9th Cir. BAP Mar. 20, 2015) (quoting *In re Jercich*, 238 F.3d at 1206) (emphasis supplied by *In re Lawson*).

## B.     Issue Preclusion.

Zeeb does not challenge the amended judgment. In fact, he cannot. Under full faith and credit principles, bankruptcy courts must give state court judgments the same issue preclusive effect that the state court would give them. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citing 28 U.S.C. § 1738). Instead, Zeeb contends that because the jury awarded Farah no damages on the conversion claims, Farah was precluded from relitigating his damages in the nondischargeability action. As Zeeb points out, damages are an essential element of Farah's conversion causes of action. *Zerin*, 53 Cal. App. 4th at 451. Without damages, Zeeb maintains, Farah cannot prove the underlying conversion claim necessary to prevail

16

under § 523(a)(6).[3] And herein lies the problem with Zeeb's preclusion argument; the jury awarded Farah zero damages, but at the same time it specifically found all of the elements for conversion, including harm. To determine the effect of the amended state court judgment, we begin with the elements of issue preclusion.

When applicable and appropriate, issue preclusion can be applied in nondischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 284–85 (1991). "In California, issue preclusion prevents parties from relitigating issues already decided in prior proceedings." *Zeeb II*, 2015 WL 6720934, at * 4 (citing *Lucido v. Super. Ct.*, 51 Cal.3d 335, 341 (1990)). For issue preclusion to apply to a California judgment, five elements must be met: (1) identical issues decided in the prior proceeding; (2) the issues were actually litigated; (3) the issues were necessarily decided; (4) the prior proceeding ended in a final decision on the merits; and (5) the party to be precluded must be identical to or in privity with a party in the prior proceeding. *Lucido*, 51 Cal.3d at 341.

Even when the threshold elements are satisfied, this means only that

---

[3] Citing Civil Rule 8(c) and *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971), Farah argues that defensive issue preclusion is an affirmative defense that must be plead or is deemed waived. Farah thus contends that Zeeb waived his issue preclusion defense. Assuming without deciding that issue preclusion based on a prior state court judgment must be plead as an affirmative defense, the bankruptcy court nonetheless considered the merits of the defense and substantively rejected it. Because Farah did not file a cross-appeal, we decline to consider whether the court erred in considering the merits of Zeeb's issue preclusion argument.

issue preclusion is "available." The decision to apply issue preclusion to a California judgment is discretionary. In exercising that discretion, the bankruptcy court is obliged to consider whether application would advance one or more of the policy considerations underlying issue preclusion: preservation of the integrity of the judicial system, promotion of judicial economy, and protection of parties from vexatious litigation. *Id.* at 342-43; *see also Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824–25 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007) (there is an "'additional' inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy.").

The party asserting issue preclusion bears the burden to establish the threshold requirements. *In re Harmon*, 250 F.3d at 1245 (citing *Lucido*, 51 Cal. 3d at 341). Thus, the proponent must provide "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." *Id.*; *see also In re Khaligh*, 338 B.R. at 825 ("[T]he proponent bears the risk of nonpersuasion.").

To start with, the bankruptcy court was required to discern what exactly was decided by the state court judgment, and then to give it effect. Obviously, there is no dispute that the jury awarded Farah zero dollars on

18

his conversion claims. Standing alone, the jury's award of no damages for the conversion claims could reasonably be viewed as a determination that Farah did not suffer any damages from the conversion. However, this finding does not stand alone. Rather, it is directly at odds with the jury's specific finding that Zeeb's conversion harmed Farah. Zeeb's construction of the amended judgment is also contrary to the state court's amended judgment holding that Farah prevailed on his conversion claims.

The bankruptcy court rejected Zeeb's interpretation of the jury's findings and the amended judgment. Rather than construing the award of zero damages on the conversion causes of action as evidence that Farah suffered no damages, the bankruptcy court determined that the jury awarded zero damages simply to avoid an award of duplicative damages for different causes of action based on the same conduct. This finding is supported by the state court's jury instructions on this issue. The state court gave the jury the following instruction, which was included in one or more of Farah's requests for judicial notice filed in the bankruptcy court:

> Samuel Farah has made claims against Kamal Zeeb . . . and Zeeb Brothers, Inc., for breach of contract and the torts of conversion and fraud. If you decide that Samuel Farah has proved both the contract and at least one tort claim, the same damages that resulted from these claims can be awarded only once.

*Pl.'s Req. For Jud. Notice (July 1, 2014) at p. 5 of 6.*[4]

We find no error in the bankruptcy's court's construction of the amended judgment. It is consistent with the jury's specific findings on the conversion claims. Indeed, it is the only view that reconciles the otherwise contradictory actions by the jury and state court, culminating with entry of the amended judgment holding that Farah prevailed on his conversion claims. Zeeb's interpretation of the amended judgment cannot be reconciled with the jury's specific findings and the amended judgment. It would require the bankruptcy court to elevate one finding over another, while ignoring the jury instruction on double recovery and the state court's determination that Farah had prevailed on his conversion claims.

Given the conflicting interpretations of the jury's decision, Zeeb failed to prove each of the elements necessary for issue preclusion. The parties actually litigated Farah's conversion claims, and the jury necessarily decided that Zeeb converted Farah's property. In doing so, the jury

---

[4] The above-quoted jury instruction apparently is derived from the first paragraph of a form jury instruction used in California civil trials. Judicial Council Of California Civil Jury Instruction ("CACI") 3934 provides basic instruction to jurors when the plaintiff seeks "damages on multiple legal theories." The first paragraph of CACI 3934 provides:

> [Name of plaintiff] seeks damages from [name of defendant] under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

CACI 3934.

20

necessarily, and specifically, found that the conversion *harmed* Farah. But the jury had already awarded damages to Farah under his breach of contract claim. Given the jury instruction that it could only award damages once, it became unnecessary that the jury *award* damages on Farah's conversion claims.

This lead the bankruptcy court to find that the "damage awards under breach of contract was [sic] merely for the sake of avoiding duplicative awards of damages." The court's finding is well supported in the record, and is the only one that reconciles the jury's findings and the amended judgment. Accordingly, the issue of conversion damages was not necessarily decided by the state court judgment because the jury had awarded damages for breach of contract. Nor was the issue of the conversion damages identical to the issue before the bankruptcy court in the nondischargeability case as the jury was instructed not to award duplicative damages.

This case is strikingly analogous to *In re Lawson*, 2015 WL 1291366. In *Lawson,* the creditor obtained a state court judgment confirming an arbitration award of damages for breach of contract, fees and costs, and conversion. The underlying acts were the same for both causes of action. *Id.* at *2. The judgment awarded separate damages for each cause of action; roughly $92,000 for breach of contract together with $72,000 in fees and costs, and $51,000 for conversion. *Id.* at *3.

After the debtor filed for bankruptcy, the creditor sought to except from discharge the entirety of the state court judgment under § 523(a)(6). *Id.* The bankruptcy court on summary judgment determined that the damages awarded for conversion were excepted from discharge under § 523(a)(6), but the remaining damages were not. *Id.* The bankruptcy court reasoned that the contract damages did not arise from the debtor's tortious conduct and that "even the worst breaches of contract do not result in a nondischargeable debt absent some fundamental public policy." *Id.* (citing *In re Jercich*, 238 F.3d at 1206). The bankruptcy court therefore granted partial summary judgment to the debtor based on the issue preclusive effect of the sate court judgment. *Id.* at *2-3.

On appeal, the sole issue in *Lawson* was whether the bankruptcy court erred when it applied issue preclusion and granted partial summary judgment based on its determination that, as a matter of law, the arbitration award's compensatory contract damages could not be excepted from discharge under § 523(a)(6). *Id.* at *4. We acknowledged that, under *In re Jercich* and California law, a breach of contract is not considered tortious unless the breach violated some independent duty under state tort law and also violated state public policy. Nonetheless, we held that the bankruptcy court erred when it determined that the breach of contract damages could not be excepted from discharge under § 523(a)(6) as a matter of law.

As in the present case, the creditor in *Lawson* "did not just prevail on

22

a breach of contract claim; it also prevailed on a tort claim based on conversion." *Id*. at \*5. *Lawson* explained that the record from the state arbitration proceedings indicated that the breach of contract damages were *equally* recoverable under both the tort of conversion and the breach of contract. In contrast, the state court judgments in *Jercich*, *Lockerby*, and their progeny were not "based on both breach of contract and tort; instead, those cases involved solely a breach of contract claim." *Id*. Furthermore, nothing in *Lawson* indicated that the arbitrator duplicated any amount of damages awarded under the two causes of action. Therefore, we concluded that *In re Jercich*'s limitations for tortious breaches of contract did not apply. Rather, we held that, where a creditor prevails on both contract and tort causes of action, the fact that the judgment ultimately awards damages on the contract claim does not preclude a later determination in a subsequent § 523(a)(6) action that the damages also flowed from the tortious conduct. *Id*. at \*4. As *Lawson* put it:

> Resort to a *Jercich* analysis [and its requirement of conduct against public policy] . . . is unnecessary where the debt that a creditor seeks to except from discharge under § 523(a)(6) involves duplicative damages on account of both tort and breach of contract theories. In that context, the damages for tort independently support nondischargeability under § 523(a)(6), and there is no need to determine whether the breach of contract was tortious.

*Id*.

23

Farah prevailed in his prior state court action on both his contract and tort claims based on the same conduct. As in *Lawson*, the fact that compensatory damages were awarded only on his breach of contract claims did not preclude Farah from litigating his § 523(a)(6) claim based upon conversion. Because the jury was instructed not to award duplicative damages, and had already awarded damages on the breach of contract claim, Zeeb did not prove the state court judgment necessarily decided the identical issue on damages. As a result, the bankruptcy court was not bound to the state court's determination to award Farah no damages on his conversion claim, and correctly permitted Farah to litigate his claims under § 523(a)(6).

## C.    Zeeb's Sufficiency Of The Evidence Argument.

The only other argument Zeeb has raised on appeal concerns the sufficiency of the evidence. He asserts that the bankruptcy should not have found willfulness within the meaning of § 523(a)(6) based on the record before the bankruptcy court. More specifically, he points to certain trial testimony, which he claims should have caused the bankruptcy court to conclude that Zeeb did not intend to harm Farah and did not subjectively believe he would harm Farah when he moved all of Storm Distribution's assets.[5]

------

[5] Zeeb failed to specifically and distinctly argue that the bankruptcy court

(continued...)

Section 523(a)(6)'s willful injury requirement requires proof of a subjective intent to injure or a subjective belief that injury is substantially certain to occur. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (quoting *In re Su*, 290 F.3d at 1142). But "[t]he [d]ebtor is charged with the knowledge of the natural consequences of his actions." *Id.* And, in addition to what the debtor might admit to knowing, "the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *In re Su*, 290 F.3d at 1146, n.6. This is exactly what the bankruptcy court did here.

While the parties presented conflicting evidence, Zeeb simply has not persuaded us that the bankruptcy court's inference of willfulness was illogical, implausible, or unreasonable on this record. Therefore, the bankruptcy court's wilfulness finding was not clearly erroneous. *Hinkson*, 585 F.3d at 1261–62 & n.21.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's

---

[5](...continued)
committed any error with respect to its finding of malicious injury. Nor did Zeeb make any sufficiency of the evidence arguments pertaining to JSSA. Accordingly, he has forfeited these arguments. *See Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (issues not specifically and distinctly argued in appellant's opening appeal brief are forfeited); *Dietz v. Ford (In re Dietz)*, 469 B.R. 11, 22 (9th Cir. BAP 2012), aff'd and adopted, 760 F.3d 1038 (9th Cir. 2014) (same).

nondischargeability judgment under § 523(a)(6).